MICHAEL C. ORMSBY
United States Attorney
Eastern District of Washington
Stephanie J. Lister
James A. Goeke
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 2:14-CR-161-WFN |
| vs. | **UNITED STATES' NOTICE OF EXPERT WITNESSES AND RULE 16 SUMMARIES** |
| CRAIG ALLEN MORGENSTERN, | |
| Defendant. | |

COMES NOW, Plaintiff, United States of America, by and through Michael C. Ormsby, United States Attorney for the Eastern District of Washington and Stephanie J. Lister, and James A. Goeke Assistant United States Attorney's for the Eastern District of Washington, respectfully submits the following Notice of Expert Witnesses and Rule 16 Summaries. [1]

---

[1] This Notice of Expert was prepared by the assigned Assistant United States Attorneys and neither written nor reviewed by any of the proposed experts referenced herein. Therefore, this written notice does not contain any adopted statements of the proposed expert witnesses and any questions from counsel should be derived only from reports authored by the proposed experts. The United States remains available to

UNITED STATES' NOTICE OF EXPERT WITNESSES AND
RULE 16 SUMMARIES - 1

## I. Notice Generally

The following is meant to provide defense counsel with written notification pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G) relating to individuals who may be called as lay and expert witnesses at trial.

Rule 16(a)(1)(G) requires the government to provide a written summary, which "describe[s] the witness's opinions, the bases and reasons for those opinions and the witness's qualifications." The United States does not believe that all of the below witnesses' testimony will be offered pursuant to Federal Rules of Evidence 702, 703, or 705.[2] For example, although much of the testimony referred to below will contain

---

further discuss with defense counsel any matters related to the expected testimony referenced in this notice.

[2] The Ninth Circuit has held that may observations, even by law enforcement personnel, which are common enough yet still require a limited amount of expertise, can properly be characterized as lay opinion testimony. *See United States v. Von Willie*, 59 F.3d 922, 929 (9th Cir. 1995) (police officer's testimony regarding nexus between drug trafficking and possession of weapons was admissible as lay witness opinion; "these observations are common enough and require such a limited amount of expertise, if any, that they can, indeed, be deemed lay witness opinion."); *see also* Fed. R. Evid. 701 (lay witness testimony "in the form of opinions or inferences" permitted when "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue"); *United States v. Hairston*, 64 F.3d 491, 493 (9th Cir. 1995) (testimony by federal agency employees (Veterans Administration Medical Center ) regarding operations and ownership of funds properly admitted as lay opinion testimony under Rule 701, because employees were familiar with operations and handled the funds as part of their employment duties); *United States v. Munoz-Franco*, 487 F.3d 25 (1st Cir. 2007) (bank officer properly testified under Rule 701 as

technical aspects, it is the government's position that the witnesses will be testifying as a percipient witnesses, as lay opinion witnesses, or for other purposes, such as for the purpose of authentication under Rule 901 or for the purpose of identifying materials recovered from computer media. *See, e.g.*, *United States v. Scott-Emuakpor*, 2000 WL 288443, at *12 (W.D. Mich. Jan. 25, 2000). Nonetheless, the United States makes these disclosures out of an abundance of caution in the event that the Court deems any of the testimony referenced herein to be expert testimony. Additionally, the United States intends to examine each witness referenced herein about the full extent of their respective backgrounds as set forth in their curriculum vitaes. The United States further intends to examine each witness about the full extent of any relevant reports referenced herein.

## II.    Testimony Regarding Analysis of Digital Evidence

Because of the volume of digital evidence seized in this case[3] more than one forensic examiner was used to examine the evidence related to the investigation, thus, the United States will introduce testimony concerning the digital evidence from Federal Bureau of Investigation ("FBI") Digital Forensic Specialists Special Agent ("S/A") Joel Martini and S/A Corey Pritchard, as well as Spokane County Sheriff's Office Forensic Specialist Detective John Schlosser. In addition, the United States

---

a lay witness about the propriety of certain loans, due to his banking experience and particular knowledge about the loans in question).

[3] The investigation of the Defendant resulted in obtaining over 350 items of digital evidence, including but not limited to, desktop and laptop computers, external and internal computer hard drives, flash/thumb drives, digital cameras and SD Cards, CD's, DVD's, ipods, an ipad, and an iphone. The United States has identified, and has agreed to show defense prior to trial, the approximately 20 items of digital evidence that the United States intends to admit at trial that were used to possess, create, copy, and/or receive child pornography images and videos.

UNITED STATES' NOTICE OF EXPERT WITNESSES AND
RULE 16 SUMMARIES - 3

expects FBI S/A Leland McEuen will testify as to his review of all the images and videos of child pornography located and retrieved from the digital evidence by the Digital Forensic Specialists S/A Martini and S/A Pritchard, as well as Detective Schlosser.  Although the testimony from all four witnesses noted above will be essentially factual in nature, each witness is also identified as a potential expert in an abundance of caution.

The testimony of, and any opinions offered by, S/A's Martini and Pritchard and Detective Schlosser will be based on their training and experience analyzing, examining, imaging, and copying computers, computer evidence, SD cards from digital cameras and other digital evidence.  Their respective experience is memorialized in their curriculum vitaes ("CVs") which have been provided to defense in discovery (S/A Martini at Bates 08357-08358; S/A Pritchard at Bates 08457-08461; and, Detective Schlosser at Bates 06629-06632).  As set forth therein, each of these witnesses have received training relating to computer searches and seizures, imaging, computer hardware, operating systems, and investigative applications and have many devices containing electronic media.  In addition, the United States has previously provided defense counsel with access to the reports of the Digital Forensic Specialists' analysis and review of the digital evidence and an opportunity to review the digital evidence at the office of the Federal Bureau of Investigation, as well as provided other discovery relating to the electronic evidence in this case.

Digital Forensic Specialists S/A Martini, S/A Pritchard, and Detective Schlosser will testify regarding the following steps in the imaging process, both generally and as applied to digital reviewed in this case, to include: (1) physical examination of the original digital media, including the receipt, inspection and preparation of each item for imaging; (2) write protecting the media, *e.g.*, the process by which the original digital media is protected from being modified, overwritten or otherwise altered during the imaging process; (3) wiping the staging media, which ensures that the

UNITED STATES' NOTICE OF EXPERT WITNESSES AND
RULE 16 SUMMARIES - 4

media destined to receive and store the image is completely empty and does not contain any data on it; (4) collecting hardware geometry and system information, *e.g.*, obtaining information about the original media; (5) creating an image; and, (6) verification, *e.g.*, confirmation that the image is an exact copy of the original media through a process known as "hashing." They will explain that a hash value is a mathematical algorithm used to fingerprint the original media, and that where the image contains the same hash value as the original, it is an exact copy. They will further testify that for all of the original media that they imaged, the hash values matched.

Digital Forensic Specialists S/A Martini, S/A Pritchard, and Detective Schlosser will also testify, as to each item of digital evidence they examined, about the procedures they employed to search for images and videos on the digital evidence, the path (location) as to where the child pornography images and videos were located on the digital evidence at issue, how in some instances they recovered deleted files and files in the recycle bin, dates and times for the files, the naming of the files, meta data located on images, the number of child pornography images and videos located, and other stored data from the digital evidence obtained during the government's investigation in this matter. They will also define and explain the appropriate terms relating to their testimony.

In addition, the United States expects S/A McEuen will testify as to his review of all the images and videos of child pornography located and retrieved from the digital evidence in this case by the Digital Forensic Specialists. The testimony of, and any opinions offered by, S/A McEuen will be based on his training and experience which is memorialized in his curriculum vitae that has been provided to defense in discovery (S/A McEuen, Bates 08355-08356). S/A McEuen's expected trial testimony is detailed in numerous reports, previously provided in discovery.

UNITED STATES' NOTICE OF EXPERT WITNESSES AND
RULE 16 SUMMARIES - 5

S/A McEuen will testify as to his review and comparison of the child pornography images and videos located on the digital media and provide testimony as to which image and videos were duplicate images and videos found on multiple items of digital evidence (*i.e.* by way of example, the HP computer located in Defendant's master bedroom contained numerous child pornography images and videos, by comparing those images and videos to the images and videos found on the Seagate and Black Maxtor External hard drives found abandoned in a trash dumpster at 911 E. Beacon in Spokane, Washington, S/A McEuen will testify some of the images and videos are identical and thus were found on three separate items of digital evidence). FBI S/A McEuen will also testify, based on his experience and interviewing of numerous defendants who have received, possessed and collected child pornography images, as to how collectors of child pornography: obtain images, save images, curate images, create backup copies of image files, and name images and videos of child pornography.

In addition, based on S/A McEuen's knowledge, skill, training, and experience, he is expected to provide his opinion on how he determined which images on Defendant's digital devices were child pornography images and videos and to provide a summary of the number of child pornography images and videos located on all of the digital media, how the Defendant used his computer to receive child pornography, as well as the relationship between the Defendant's use of his computer and the Internet and interstate and foreign commerce.

Also, based on S/A McEuen's knowledge, skill, training, and experience, he is expected to testify as to what is commonly referred to as "grooming." The term "grooming" refers to a process where offenders engage in certain behaviors and mental games to secure access to victims, to make victims more comfortable with the sexual activity, and then sexually engage the victim. "Grooming" is also described as a process of taking someone who is extremely naive and innocent

UNITED STATES' NOTICE OF EXPERT WITNESSES AND
RULE 16 SUMMARIES - 6

about sexual matters, attempting to develop a comfort level, and then moving into sexual acts. In this case, S/A McEuen will testify that the Defendant groomed at least one victim to knowingly engage in sexual activity and the production of sexually explicit images. In addition, S/A McEuen will testify that the Defendant groomed other victims by developing the trust of their parents and the willingness of the victims to spend time with the Defendant, allowing the Defendant access and opportunity to sexually molest and produce sexually explicit images of the victims after sedating the victims.

### III. Medical Examiners

On October 18, 2014, Victim D was the subject of a sexual assault examination at Holy Family Hospital in Spokane, Washington following allegations that the Defendant sexually assaulted Victim D on or about October 17, 2014[4]. As part of the sexual assault examination, various tests were performed to include a toxicology screening of of Victim D's urine. The United States expects to offer testimony from various witnesses involved in the sexual assault examination of Victim D to include the assigned attending physician, Dr. Todd Ewert, the assigned Registered Nurse ("Nurse"), Michelle Baxter, and a lab technician ("Tech"), Barbara Hickson. The United States has requested and will provide the CVs for the three aforementioned witnesses upon receipt. The report reflecting the sexual assault examination of Victim D and reflecting the results of the toxicology examination of Victim D's urine is found at Bates 08334-08345.

The United States expects that Dr. Ewert's testimony and any opinions offered by Dr. Ewert will be based on his training and experience reflected in his CV and the

---

[4] These allegations form the basis of Count 34 of the Second Superseding Indictment. The United States has advised the Defendant that Count 34 contains a typographical error with regard to the date reference of October 17, 2011 and that the United States will seek correction of the date to October 17, 2014 prior to trial.

UNITED STATES' NOTICE OF EXPERT WITNESSES AND
RULE 16 SUMMARIES - 7

previously mentioned report. The United States expects that Dr. Ewert will testify that in regards to sexual assaults, it is rare for the victim to display observable physical injuries. The United States further expects Dr. Ewert will testify that factors to consider as whether or not there is a likelihood of a physical injury include but are not limited to: (1) viciousness of attack; (2) whether the victim was physically restrained; (3) use of lubricants; (4) penis size of assailant; (5) whether the victim was non-resistive; and, the (6) nature of the sexual assault (*i.e.*, the way in which the victim was assaulted). The United States further expects that Dr. Ewert will testify that he ordered the sexual assault examination of Victim D and that as part of that examination, various evidence was obtained from Victim D to include urine, and that tests were performed on the evidence obtained from Victim D, to include a toxicology screen of Victim D's urine.

The United States further expects that Dr. Ewert will testify as to purpose and the performance of the sexual assault examination of Victim D, including testimony that he ordered the urine toxicology screen and/or that a urine toxicology screen is a standard part of a sexual assault examination. In particular, the United States expects Dr. Ewert to testify that the toxicology screen of Victim D's urine was ordered in part to determine whether Victim D had ingested any sedatives or other substances. The United States further expects that Dr. Ewert will testify that the toxicology screen of Victim D's urine was positive for Benzodiazepines. The United States expects that Dr. Ewert will testify that Benzodiazepine has a sedative effect; the substance is found in various medications; and, the substance can be ingested in a variety of ways, including through liquids. The United States also expects Dr. Ewert to testify about his training and experience in administering sexual assault examinations and his percipient observations of Victim D.

The United States expects that Nurse Baxter's testimony and any opinions she offers will be based on her training and experience reflected in her CV and the

previously mentioned report.  The United States expects that Nurse Baxter will testify about the acquisition and chain of custody of urine from Victim D on October 18, 2014, in particular that she acquired the urine sample consistent with standard medical procedures and packaged the sample for further analysis to include a toxicology screen.  The United States further expects Nurse Baxter to testify about her interactions with Victim D and the physical state of Victim D on October 18, 2014.  Nurse Baxter's interactions with Victim D and role in acquiring and submitting Victim D's urine sample are detailed in the aforementioned report in discovery.  The United States also expects Nurse Baxter to testify about her training and experience in administering sexual assault examinations and that the sexual assault examination of Victim D was done consistent with her training.

The United States expects that Tech Barbara Hickson's testimony and any opinions she offers will be based on her training and experience as detailed in her CV as well as the previously mentioned report.  The United States expects Tech Hickson to testify that she performed a toxicology screen of Victim D's urine as reflected by the chain of custody and that the toxicology screen of Victim D's urine was positive for Benzodiazepines.

### IV.    Forensic Scientist

As noted above in Section III, a urine sample from Victim D was secured during the previously noted sexual assault examination on October 18, 2014.  The urine sample was then further analyzed by Forensic Scientist Justin L. Knoy at the Washington State Patrol ("WSP") Laboratory.  A copy of the report of Washington State Patrol Toxicology Report was previously provided to the Defendant in discovery at Bates 06812-06813.  A copy of Forensic Scientist Knoy's CV was provided in discovery at Bates 07497-7499.

As set forth in the Toxicology Report, the United States expects that Forensic Scientist Knoy will testify that Victim D's urine sample was tested on November 10,

2014 by Enzyme Multiplied Immunoassay Technique for the presence of various substances to include Benzodiazepines and that the sample tested presumptive for Benzodiazepines. The United States further expects that Forensic Scientist Knoy will testify that the urine was also tested by Gas Chromatography/Mass Spectrometry on November 13, 2014 for basic drugs and metabolites and was positive for Diphenhydramine. The United States expects that Forensic Scientist Knoy will also testify that the urine was further tested by Liquid Chromatography/Tandem Mass Spectrometry for Benzodiazepines, quetiapine, and zopiclone and positive for Oxazepam and Temazepam. The United States expects that Forensic Scientist Knoy will testify about the function and purpose of each of the tests noted above and that he will also testify about the chain of custody for Victim D's urine, specifically that the sample was received from the Stevens County Sheriff's Office as reflected in the Toxicology Report.

### V.  Pediatric Anesthesiologist

The United States is in the process of retaining an Anesthesiologist to testify about Benzodiazepines and anesthesiology techniques. The United States anticipates that Dr. Thomas Satterfield will testify in this capacity. The United States will provide a CV for Dr. Satterfield as soon as possible.

The United States anticipates that Dr. Satterfield will testify about Benzodiazepines as follows: 1) Benzodiazepines act as a sedative and may be used as a sleep aid; 2) Benzodiazepines have an effect on memory such that someone ingesting Benzodiazepines is likely not recall what occurred while under the influence of the drug; 3) Benzodiazepines can cause respiratory distress and other side effects if used beyond a certain dosage; 4) there are a variety of ways to deliver Benzodiazepines that may effect the impact of the drug on a particular person; 5) Benzodiazepines are used to address anxiety; and, 6) Benzodiazepines should be administered in a controlled setting and that a failure to do so may result in significant

UNITED STATES' NOTICE OF EXPERT WITNESSES AND
RULE 16 SUMMARIES - 10

negative side effects, to include respiratory failure and death. The United States further expects that Dr. Satterfield will testify about methods and techniques Anesthesiologists use to determine whether a subject who has ingested Benzodiazepines (such as Victim D) is under the effects of the drug. In particular, the United States expects that Dr. Satterfield will explain particular actions by the Defendant in various video clips wherein the Defendant appears to check whether individual children are sedated, such as by stroking the abdomen and checking breathing.

## VI.    DNA EXAMINATION AND RESULTS

The United States expects to call Forensic Scientist Ethan Smith of the Washington State Patrol to testify regarding DNA analysis in this case. Forensic Scientist Smith's opinions are based on his personal interpretation of results obtained from items submitted to the WSP Crime Laboratory, as well as his training, education, experience, and expertise as a DNA Forensic Examine which are contained in his CV previously provided to defense in discovery at Bates 07494-0796. Forensic Scientist Smith's expert forensic opinion, and the basis for those opinions, is set forth more fully in his report, which has been provided to defense counsel (Bates 6612-6613) and upon completion of a test based on a consumption agreement/order for the relevant Deoxyribonucleic acid ("DNA") sample dated November 20, 2015[5], a final report will be provided to defense upon its completion.

At trial, the United States anticipates that Forensic Scientist Smith will describe/define forensic serology. Forensic Scientist Smith will describe how serological testing is performed at the WSP Crime Laboratory. The United States expects that Forensic Scientist Smith will also describe/define DNA. The United States expects Forensic Scientist Smith will testify as to where DNA is found and how

---

[5] On November 20, 2015, the Defendant agreed to the consumption of the DNA at issue.

UNITED STATES' NOTICE OF EXPERT WITNESSES AND
RULE 16 SUMMARIES - 11

DNA varies from person to person. Forensic Scientist Smith will testify as to the kinds of differences he examines in DNA,.*i.e.*, short tandem repeat and provide an example. The United States expects that Forensic Scientist Smith will describe how DNA typing is performed and will describe the possible outcomes of a DNA examination. The United States further expects that Forensic Scientist Smith will testify as to how he determines the significance of a DNA match, *i.e.* random match probability/statistics and how it is possible to identify a source of DNA. The United States further expects Forensic Scientist Smith will testify as to a "mixture" of DNA and the standards of the WSP Crime Laboratory, *i.e.* that the Laboratory is accredited, the standards of scientific community, the proficiency and competency of tests, and, as to population frequency data.

In particular, in the instant case, the United States expects that Forensic Scientist Smith will testify that he received a listing of items which were contained in the sexual assault kit and information which was utilized to determine the most appropriate examination methods(s). The United States further expects that Forensic Scientist Smith will testify that he determined which items should be tested and that at his direction, exam plans were implemented. The items were then submitted for serological examinations. The United States expects that Forensic Scientist Smith will testify that serological testing is used to identify bodily fluids for subsequent DNA testing and that he reviewed the results of the serological testing and made findings as to whether or not blood and/or semen were present.

The United States further expects that Forensic Scientist Smith will testify that at his direction, the samples were submitted for collection and extraction and the process involved (such as cutting a swab head, placing such item in a tube, adding chemicals and heat, which removes DNA from cells). The United States expects further testimony regarding that the quantification and amplification process proceeded, as well as quantification estimates concerning how much DNA was

UNITED STATES' NOTICE OF EXPERT WITNESSES AND
RULE 16 SUMMARIES - 12

extracted from the sample with the use of chemicals and robotic instrumentation (the amplification process is a copying process which copies specific regions of the DNA). The United States then expects testimony from Forensic Scientist Smith regarding amplification that is then run through capillary electrophoresis and the generation of a DNA profile. The United States expects that Forensic Scientist Smith will testify that known samples were run through the same procedures. The United States expects that Forensic Scientist Smith will then testify about how the results of the consumption order referenced herein relate to the Defendant. Again, upon completion of this testing, which remains ongoing, the United States will provide all appropriate reports and amend this Notice as appropriate.

### VII.  Reciprocity

In conclusion, having now provided notice pursuant to Fed. R. Cr. P. 16(a)(1)(G) he United States requests disclosure pursuant to Fed. R. Cr. P. 16(b)(1)(C) of any expert testimony that the defense intends to offer.

### VIII. Conclusion

The United States respectfully submits the foregoing expected expert testimony (to the extent that any such testimony is not considered lay opinion testimony or otherwise not expert testimony) will assist the trier of fact in understanding the evidence and determining material facts in issue. The United States reserves the right

///
///
///
///
///
///
///

UNITED STATES' NOTICE OF EXPERT WITNESSES AND
RULE 16 SUMMARIES - 13

to supplement this notice given the changing nature of the case and ongoing analysis and testing of evidence.

DATED December 21, 2015.

MICHAEL C. ORMSBY
UNITED STATES ATTORNEY

*s/Stephanie J. Lister*
Stephanie J. Lister
Assistant United States Attorney

*s/James A. Goeke*
James A. Goeke
Assistant United States Attorney

## CERTIFICATION

I hereby certify that on, I electronically filed the foregoing with the Clerk of the Court and counsel of record using the CM/ECF System.

*s/James A. Goeke*
James A. Goeke
Assistant United States Attorney
