1  MICHAEL C. ORMSBY
   United States Attorney
2  Eastern District of Washington
   Stephanie J. Lister
3  James A. Goeke
   Assistant United States Attorneys
4  Post Office Box 1494
   Spokane, WA 99210-1494
5  Telephone:  (509) 353-2767
6

7              UNITED STATES DISTRICT COURT
8              EASTERN DISTRICT OF WASHINGTON

9  UNITED STATES OF AMERICA,
10
                        Plaintiff,        2:14-CR-0161-WFN
11
12        vs.                             **UNITED STATES'**
                                          **TRIAL BRIEF**
13  CRAIG A. MORGENSTERN,
14
                        Defendant.
15

16

17        Plaintiff, United States of America, by and through Michael C. Ormsby, United
18  States Attorney for the Eastern District of Washington, and Stephanie J. Lister and
19  James A. Goeke, Assistant United States Attorneys for the Eastern District of
20  Washington, hereby files this Trial Brief to aid the Court in understanding this case
21  and issues that might arise during the trial:
22

23

24

25

26

27

28

UNITED STATES' TRIAL BRIEF - 1

**INDEX**

I.    **STATUS OF THE CASE**

II.   **SUMMARY OF THE CASE**

III.  **APPLICABLE STATUTES AND ELEMENTS OF THE OFFENSES**

    A.   **Aggravated Sexual Abuse of a Child, in violation of 18 U.S.C. § 2241(c) (Counts 1, 4, 6, 8, 10, 12, 14, 16, 18, 20, 22, 24, 30)**

        1.   <u>Statute and Relevant Counts</u>

        2.   <u>Elements of Aggravated Sexual Abuse of a Child</u>

        3.   <u>The Term "Sexual Act"</u>

        4.   <u>Intent of Travel</u>

        5.   <u>Mistake of Age Not a Defense</u>

        6.   <u>Jurisdiction</u>

    B.   **Production or Attempted Production of Child Pornography, in violation of 18 U.S.C. § 2251(a) (Counts 2, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31-33)**

        1.   <u>Statute and Relevant Counts</u>

        2.   <u>Elements of Production of Child Pornography</u>

        3.   <u>Elements of Attempted Production of Child Pornography</u>

        4.   <u>Persons A-F Were Under 18 Years of Age</u>

        5.   <u>The Terms "employed," "used," "persuaded," "induced, "or "enticed"</u>

        6.   <u>The Term "sexually explicit conduct"</u>

        7.   <u>The Term "producing"</u>

        8.   <u>The Terms "interstate or foreign commerce"</u>

            a.   *The Defendant knew or had reason to know that the visual depiction would be transported using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce.*

            b.   *The visual depictions were actually transported using any means and facility of interstate commerce or in and affecting interstate commerce.*

          c.     *Such visual depiction was produced using materials that have been mailed or shipped or transported in and affecting interstate or foreign commerce by any means, including by computer.*

**C.**    **Transportation with Intent to Engage in Sexual Contact with a Child, in violation of 18 U.S.C. § 2423(a) (Counts 26, 28)**

       1     Statute and Relevant Counts

       2.    Elements of Transportation with Intent to Engage in Sexual Contact with a Child

       3.    Transportation Across State Lines

       4.    Intent of Transportation of Minor

       5.    The Term "sexual activity"

       6.    Mistake of Age of Victim Not A Defense

       7.    Consent is Not a Defense

**D.**    **Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2) (Count 34)**

       1.    Statute and Relevant Count

       2.    Elements of Receipt of Child Pornography

       3.    The Term "receipt"

**E.**    **Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count 35)**

       1.    Statute and Relevant Count

       2.    Elements of Possession of Child Pornography

       3.    The Term "Possession"

**F.**    **Proof Related to Receipt and Possession of Child Pornography**

       1.    The Term "knowingly"

       2.    Proof of Minor Children

       3.    Proof of Interstate Travel

**IV.    EVIDENTIARY ISSUES**

    **A.    Admissibility of Child Pornography Images.**

    **B.    Admissibility of Computer Files**

    **C.    Proof of Receipt and Possession of Child Pornography Images Found in Unallocated Space**

    **D.    File Names**

    **E.    Admissibility of Evidence of Deletion and Destruction and Jury Instruction of Consciousness of Guilt**

    **F.    Closure of the Courtroom**

    **G.    Chain of Custody**

    **H.    Birth Certificates**

    **I.    Charts and Summaries**

    **J.    Expert Testimony**

    **K    Opinion Testimony**

    **L.    The Defendant's Statements**

    **M.    Cross-Examination of the Defendant**

    **N.    Evidence of the Defendant's Character**

    **O.    Cross-Examination of Character Witnesses**

    **P.    Hearsay Exceptions Regarding Statements by Person D**

**V.    POSSIBLE DEFENSES**

**VI.    RECIPROCAL DISCOVERY**

**VII.    DOUBLE JEOPARDY**

**VIII.    CONCLUSION**

# I.    STATUS OF THE CASE

*Third Superseding Indictment:*  The Third Superseding Indictment, returned on January 5, 2016, alleges 35 counts against the Defendant as well as a notice of forfeiture (ECF No. 80) as follows:

- Aggravated Sexual Abuse of a Child, in violation of 18 U.S.C. § 2241(c) (Counts 1, 4, 6, 8, 10, 12, 14, 16, 18, 20, 22, 24, 30);

- Production or Attempted Production of Child Pornography, in violation of 18 U.S.C. § 2251(a) (Counts 2, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31-33);

- Transportation with Intent to Engage in Sexual Contact with a Child, in violation of 18 U.S.C. § 2423(a) (Counts 26, 28);

- Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2) (Count 34); and,

- Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count 35).

*Trial:*  Trial in this matter is scheduled to begin Monday, February 22, 2016, at 9:00 a.m. before the Honorable Wm. Fremming Nielsen, Senior United States District Judge, in Spokane, Washington.  The estimated time of trial is approximately two to three weeks.  Trial by Jury has not been waived by the parties.  The Defendant is in custody.  There are no pretrial motions pending, however, a final Pre-Trial Conference is scheduled for February 22, 2016, at 8:00 a.m.

*Minor Victims:*  This case involves numerous minor victims and victims who were minors at the time of the alleged offenses, but are now adults.  Accordingly, given the nature of the allegations against the Defendant and as recognized by statute, the privacy of the victims is paramount.  To this end, the parties have agreed to call the victims named in the Indictment "Person A", "Person B", *etc*.  The United States further expects to seek closure of the courtroom to the public during the testimony of Persons A, B and D and the parent of Persons C, E, and F, and the parent of D.  The legal standard for such closure is discussed below.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Witnesses and Case Agents:*  The United States expects to call approximately 40 to 45 witnesses in its case-in-chief.  The United States will provide the Court and the Defendant with a witness list on February 16, 2016.  The United States also previously requested, the defense did not object, and this Court approved, the United States utilizing two case agents at counsel table during trial (FBI Special Agent Leland McEuen and Stevens County Sheriff's Office Detective Dwayne Ford).

*Government Exhibits:*  The United States will offer less than 500 exhibits. Some exhibits are sexually explicit and consist of inherently graphic child pornography images and videos.  Defense counsel has previously reviewed the physical evidence, photographs, documentary evidence and child pornography images and videos.  In addition, the United States will be providing an exhibit list to the Court and the Defendant on February 16, 2016.  The United States also requests permission to add to its exhibit list as needed, based upon the Defendant's questions to witnesses and possible defenses that may arise, and whether the United States is compelled to offer any rebuttal testimony/evidence.

*Stipulations:*  The parties have entered into stipulations regarding chain of custody for the a duffle bag obtained from a third party residence and stipulations regarding the authenticity and admissibility regarding travel records, including airline and expense records.  The parties continue to discuss additional stipulations to include evidence concerning the Defendant's employment and expect to cooperate on additional stipulations as appropriate.

## II.    SUMMARY OF THE CASE

The United States expects to introduce evidence of the following facts, among others, during the trial in this case, through witness testimony, documentary evidence (to include still and video images of child pornography), forensic evidence (including forensic electronic evidence and other scientific analysis), and opinion testimony:

UNITED STATES' TRIAL BRIEF - 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The United States' case at trial will begin with the discovery of the Defendant's crimes when Person D, a minor child less than 14 years old, escaped from the Defendant's residence in Stevens County on October 18, 2014 after the Defendant sexually assaulted him during the early morning hours.  On October 17, 2014, the Defendant picked up Person D from his middle school for a sleepover at the Defendant's residence in Stevens County.  Person D expected that the evening would be spent watching movies and playing with various games and toys the Defendant had at his residence, as Person D had done on several occasions in the past.  The Defendant, on the other hand, planned to drug Person D such that he would be incapacitated allowing the Defendant to engage in sexually explicit conduct against Person D, all the while documenting the abuse through still and video child pornography images, as the Defendant had done with fiver other minor children beginning in 2008, to include Person D as well as Persons A, B, C, E, and F in the Eastern District of Washington as well as in Idaho, Mississippi and Tennessee, all as alleged in the 35-Count Third Superseding Indictment.

The United States will prove that after an evening watching movies, playing various games, and playing with various toys, as well as viewing various firearms the Defendant maintained in his bedroom, the Defendant during the late evening/early morning of October 17-18, 2014 surreptitiously provided Person D with a sedative (or sedative "cocktail"), ultimately determined to consist of Benzodiazepines.  The sedative, however, did not fully sedate Person D such that rather than being knocked out, Person D instead recalls in vivid detail that the Defendant, after providing Person D with the sedative and believing it had incapacitated Person D, moved Person D to the Defendant's bedroom, placed Person D on a small makeshift bed next to the Defendant's bed, and then engaged in sexually explicit conduct against Person D.  During the sexual assault, Person D feared for his life and pretended to be asleep.  Person D also recalled lights and the

clicking of cameras during the sexual assault.  Person D then pretended to wakeup whereupon the Defendant retreated to a bathroom.

Person D then grabbed his mobile phone and fled the Defendant's residence at approximately 2:30 a.m. on October 18, 2014.  Once outside the Defendant's residence, Person D called 911 and ran to a nearby house.  The residents of the nearby house welcomed Person D inside while two Stevens County Sheriff's Deputies were dispatched to investigate Person D's 911 report.  At the nearby house, Person D provided a detailed description of the sexual assault that he had just endured to the 911 operator.  The United States will play Person A's 911 call for the Jury.  The Stevens County Sheriff's Deputies responded within approximately 35 minutes, made contact with Person D and the residents of the house that harbored him after his escape from the Defendant, and ultimately the Defendant.

As the Court is aware from the prior suppression hearing in this case, the Defendant then consented to a walkthrough of his house and consented to the Deputies taking pictures of the interior of his house during the early morning of October 18, 2014.  The Defendant was not arrested that morning.  Over the next several days, various search warrants were obtained for the Defendant's residence in Stevens County, another residence in Colbert, Washington, as well as other locations. Search warrants were also ultimately secured for electronic devices found at the Defendant's Stevens County residence and other locations as well as for electronic devices abandoned by the Defendant at various locations around Spokane in an ultimately futile attempt to destroy the photographic evidence of his criminal conduct. The United States will offer evidence that the Defendant began hiding and destroying evidence from the time Person D escaped the Defendant's house up until his arrest on the instant federal charges on October 24, 2014.  Specifically, the evidence will establish that the Defendant attempted to delete from the internal hard drive on his computer at his residence a number of the child pornography images and videos that

UNITED STATES' TRIAL BRIEF - 8

he had produced and collected.  The evidence will also establish that the Defendant attempted to destroy and throw away numerous other items of evidence, including stored child pornography that the Defendant had produced, cameras he used to produce child pornography, and other things, such as tripods and lights, that he used to produce child pornography.

The investigation that flowed from Person D's escape from the Defendant's house on October 18, 2014 resulted in the discovery of approximately one million images of child pornography on numerous electronic devices, including from computer hard drives and other electronic memory devices found at the Defendant's residence as well as on numerous other hard drives and electronic devices abandoned by the Defendant at other locations.  Among these video and still images of child pornography were numerous visual images of the Defendant engaging in sexually explicit conduct with Persons A, B, C. D, E, and F, as well as numerous other images of child pornography the Defendant obtained from the Internet.  Further investigation was also able to identify Persons A, B, C, E and F and determine that, as specified in the Third Superseding Indictment, the Defendant traveled outside the Eastern District of Washington to engage in sexual acts with Persons A, B, C, D, E, and F starting with Person A as far back as 2008 and continuing with the other victims as set forth in the Third Superseding Indictment.  Further investigation also established that the Defendant produced child pornography involving Persons A, B, C, D, E, and F using materials that had travelled in interstate commerce (such as with foreign-made cameras recovered from the Defendant's residence and abandoned by the Defendant elsewhere and with foreign-made electronic storage devices) and that on occasions that the Defendant produced child pornography outside the Eastern District of Washington, the Defendant moved the child pornography in interstate commerce back to the Eastern District of Washington, all as set forth in the Third Superseding Indictment beginning in 2008 and continuing through 2014, with a final attempt to produce

child pornography occurring on October 18, 2014 involving Person D as detailed previously.  The investigation also established that the Defendant caused Person A to travel from Mississippi on two occasions to engage in sexually explicit conduct, that the Defendant necessarily possessed numerous images of child pornography, and that the Defendant received additional images of child pornography (aside from the numerous images he produced himself) over the Internet, again all as set forth in the Third Superseding Indictment.

### III.    APPLICABLE STATUTES AND ELEMENTS OF THE OFFENSES

**A.    Aggravated Sexual Abuse of a Child, in violation of 18 U.S.C. § 2241(c) (Counts 1, 4, 6, 8, 10, 12, 14, 16, 18, 20, 22, 24, 30)**

    1.    Statute and Relevant Counts

The Defendant is charged in Counts 1, 4, 6, 8, 10, 12, 14, 16, 18, 20, 22, 24, 30 with Aggravated Sexual Abuse, in violation of 18 U.S.C. § 2241(c) which provides:

> Whoever crosses a State line with intent to engage in a sexual act with a person who has not attained the age of 12 years, . . . knowingly engages in a sexual act with another person who has not attained the age of 12 years . ., or knowingly engages in a sexual act by rendering another person unconscious… or administers to another person …without the knowledge or permission of that person, a drug, or other similar substance and thereby engages in a sexual act with another person who has attained the age of 12 years but has not attained the age of 16 years (and is at least 4 years younger than the person so engaging) or attempts to do so…, shall be fined under this title and imprisoned for not less than 30 years or for life.

18 U.S.C. § 2241(c).  The Counts of Aggravated Sexual Abuse, in violation of 18 U.S.C. § 2241(c), are summarized in the table below:

UNITED STATES' TRIAL BRIEF - 10

| Summary of Counts Aggravated Sexual Abuse of a Child | | | | |
|---|---|---|---|---|
| Count | Date | Location | Person/Age | Aggravator |
| 1 | 9/08 | Meridian, MS | A / 12<16 | Drugged/Unconscious |
| 4 | 10/08 | Tennessee | A / 12<16 | Drugged/Unconscious |
| 6 | 12/08 | Meridian, MS | A / 12<16 | Drugged/Unconscious |
| 8 | 11/08 | Meridian, MS | F / 12<16 | Drugged/Unconscious |
| 10 | 1/09-2/09 | Meridian, MS | F / 12<16 | Drugged/Unconscious |
| 12 | 5/09 | Meridian, MS | A / 12<16 | Drugged/Unconscious |
| 14 | 6/09 | Meridian, MS | A / 12<16 | Drugged/Unconscious |
| 16 | 8/09-9/09 | Meridian, MS | A / 12<16 | Drugged/Unconscious |
| 18 | 4/10-5/10 | Idaho | B / 12<16 | Drugged/Unconscious |
| 20 | 4/1-5/10 | Idaho | C / < 12 | < 12 years old |
| 22 | 4/30-5/10 | Idaho | E / < 12 | < 12 years old |
| 24 | 11/10 | Idaho | Minor / < 12 | < 12 years old |
| 30 | 10/11 | Idaho | D / < 12 | < 12 years old |

The United States will be moving to dismiss Count 16 prior to trial, however, because of the timing of this dismissal, would prefer the Counts to remain the same and would like to discuss this issue and the timing of the filing of the Motion to Dismiss at the final pre-trial conference.

As to Count 24, the Third Superseding Indictment did not identify which minor had been abused. The United States expects the evidence at trial will establish that it was Person C who the Defendant abused and defense counsel has been so advised.

2.    <u>Elements of Aggravated Sexual Abuse of a Child</u>

In order for the Defendant to be found guilty of aggravated sexual abuse of a child, the Government must prove each of the following elements beyond a reasonable doubt:

First:    The Defendant knowingly engaged in a sexual act with a person;

Second:    At the time, the person had not yet reached the age of twelve years or if the person was over the age of twelve years but under sixteen years of age; the person had been rendered unconscious or had been administered a drug or other similar substance without the knowledge or permission; and at the time, the person had not yet reached the age of twelve years or the person had been rendered unconscious or had been administered a drug or other similar substance without the knowledge or permission of a person over the age of twelve years but under sixteen years of age, and,

Third:    The Defendant crossed a State line with the intent to engage in a sexual act with a person who was under the age of sixteen.

Model Jury Instructions for the Ninth Circuit, § 8.168 (2010)(modified).

3.    <u>The Term "Sexual Act"</u>

The term "sexual act" means:

(B) contact between the mouth and the penis, … or

. . .

(D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

18 U.S.C. § 2246(2).

UNITED STATES' TRIAL BRIEF - 12

4.    <u>Intent of Travel</u>

The United States must prove beyond a reasonable doubt that the Defendant formed the intent to engage in a sexual act, production of child pornography, before the Defendant traveled across state lines.  It is not necessary for the United States to prove that aggravated sexual activity/production of child pornography was the sole purpose for any transportation from one state to another.  A person may have several different purposes or motives for such travel and each may prompt, in varying degrees, the act of making the journey.  The United States must prove, however, that a significant or dominant purpose of the travel from one state to another was to produce child pornography.  *See United States v. Hayward*, 359 F.3d 631, 637-38 (3d Cir. 2004) (prosecution for interstate transportation of a minor to engage in criminal sexual activity under 18 U.S.C. § 2423(a)); *United States v. Vang*, 128 F.3d 1065, 1068, 1071-72 (7th Cir. 1997) (prosecution under § 2423(b) and noting that Court's use the word dominant to "mean merely 'significant' or 'compelling' or 'efficient.'"); *United States v. Kinslow*, 860 F.2d 963, 967 (9th Cir. 1988) ("a federal crime under 18 U.S.C. § 2423 exists if the immoral activity is 'one of the dominant purposes' of the transportation . . . .[i]t is not necessary, therefore, that the immoral activity be the only purpose of the trip."), *overruled on other grounds*; *United States v. Brackeen*, 969 F.2d 827, 829 (9th Cir. 1992); *United States v. Fox*, 425 F.2d 996, 999 (9th Cir. 1970).

5.    <u>Mistake of Age is Not a Defense</u>

An alleged mistake as to the victim's age is not a defense to a charge of aggravated sexual abuse under a statute prohibiting anyone from knowingly engaging in sexual contact with another person who has not attained the age of 12 years.  *See* 18 U.S.C. §  2241(d); *United States v. Juvenile Male*, 211 F.3d 1169, 1171 (9th Cir.2000).

6.    <u>Jurisdiction</u>

This Court has jurisdiction over the offenses because they began, continued, and/or were completed within the Eastern District of Washington.  18 U.S.C. § 3237(a).

**B.    Production or Attempted Production of Child Pornography, in violation of 18 U.S.C. § 2251(a) (Counts 2, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31-33)**

1.    <u>Statute and Relevant Counts</u>

The Defendant is charged in Counts 2, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31-32 with Production of Child Pornography and Count 33 charges the Defendant with Attempted Production of Child Pornography, in violation of 18 U.S.C. § 2251(a), which provides:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in… any sexually explicit conduct, [or attempts to do so],  for the purpose of producing any visual depiction of such conduct… shall be punished …, if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

18 U.S.C. § 2251(a).  The Counts of Production of Child Pornography and Attempted Production of Child Pornography, in violation of 18 U.S.C. § 2251(a), are summarized in the table below:

| Summary of Counts Production of Child Pornography | | | |
|---|---|---|---|
| **Count** | **Date** | **Location** | **Person/Age** |
| 2 | 9/30/08 | Meridian, MS | A / minor |
| 3 | 10/7-10/8/08 | Meridian, MS | A / minor |
| 5 | 10/17-10/20/08 | Tennessee | A / minor |
| 7 | 12/6/08-12/7/08 | Meridian, MS | A / minor |
| 9 | 12/6-7/08 | Meridian, MS | F / minor |
| 11 | 2/1/09 | Meridian, MS | F / minor |
| 13 | 5/14-15/09 | Meridian, MS | A / minor |
| 15 | 6/21/09 | Meridian, MS | A / minor |
| 17 | 9/11/09 | Meridian, MS | A / minor |
| 19 | 4/30-4/1/10 | Idaho | B / minor |
| 21 | 4/30-5/10 | Idaho | C / minor |
| 23 | 4/30-5/10 | Idaho | E / minor |
| 25 | 11/21/10 | Idaho | C / minor |
| 27 | 1/7-1/10/11 | EDWA | A / minor |
| 29 | 7/5/11 | EDWA | A / minor |
| 31 | 10/1-2/11 | Idaho | D / minor |
| 32 | 10/3-4/14 | Idaho | D / minor |
| Summary of Count of Attempted Production of Child Pornography | | | |
| 33 | 10/17/14 | EDWA | D / minor |

2.    Elements of Production of Child Pornography

In order for the Defendant to be found guilty of production or attempted production of child pornography, the Government must prove each of the following elements beyond a reasonable doubt:

First:        That the person was less than 18 years old;

Second:    That the Defendant employed, used, persuaded, induced, or enticed the minor to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct; and

Third:       (a) The Defendant knew or had reason to know that such visual depiction would be transported using any means or facility of interstate or foreign commerce; or

(b) The Defendant knew or had reason to know that such visual depiction would be transported in or affecting interstate or foreign commerce; or

(c) Such visual depiction was produced using materials that have been mailed or shipped or transported in and affecting interstate or foreign commerce by any means, including by computer; or

(d) the visual depiction was actually transported using any means and facility of interstate and foreign commerce; or

(e) the visual depiction was actually transported in and affecting interstate and foreign commerce.

Model Crim. Jury Instr. 9th Cir. 8.181 (2010)  *See* 18 U.S.C. § 2251(a).

3.    Elements of Attempted Production of Child Pornography

Count 33 of the Third Superseding Indictment charges the Defendant with Attempted to Production of Child Pornography.  To demonstrate attempt, the United States must prove the following beyond a reasonable doubt:

First:          That the Defendant intended to engage a minor in sexually explicit conduct for the purpose of making a visual depiction of that conduct; and

Second:      That the Defendant engaged in a purpose act that, under the circumstances as he believed them to be, amounted to a substantial step towards the commission of the crime and strongly corroborated his criminal intent.

In determining whether the Defendant's actions amounted to a substantial step toward the commission of the crime, it is necessary to distinguish between mere preparation on the one hand, and the actual doing of the criminal deed on the other. Mere preparation, which may consist of planning the offense, or of devising, obtaining or arranging a means for its commission, is not an attempt, although some preparations may amount to an attempt. The acts of a person who intends to commit a crime will constitute an attempt where the acts themselves clearly indicate an intent to willfully commit the crime, and the acts are a substantial step in the course of conduct planned to culminate in the commission of the crime. *See United States v. Goetzke*, 494 F.3d 1231 (9th Cir. 2007) (defining criteria for "substantial step" in similar context).

4.     Persons A-F Were Under 18 Years of Age

With respect to Production of Child Pornography, the United States must prove all the minors/Persons A-F were under the age of eighteen years. This proof will consist of testimony of Persons A, B and D and the Parent of C, E, and F, as well as the Parent of D. In addition, United States intends to offer evidence of the dates the productions occurred as well as the birth certificates of Persons A-F.

The Defendant's knowledge of the victim's age is neither an element of the offense nor available as an affirmative defense. *See United States v. United States District Court,* 858 F.2d 534 (9th Cir.1988); *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 76 n.5 (1994) ("[P]roducers may be convicted under § 2251(a) without

UNITED STATES' TRIAL BRIEF - 17

proof they had knowledge of age …") (dicta) and *United States v. Malloy*, 568 F.3d 166, 171 (4th Cir. 2009).  Accordingly, so long as the United States proves that the victims were, in fact, under 18 years of age at the time of the charged conduct, the Government has satisfied its burden with respect to this element.

5.    The Terms "employed," "used," "persuaded," "induced, "or "enticed"

Section 2251(a) makes illegal the use, persuasion, inducement, or enticement of children to engage in sexually explicit conduct for the purpose of creating visual depictions of that conduct.  *See United States v. Bell*, 5 F.3d 64, 68 (4th Cir. 1993); *United States v. Buculei*, 262 F.3d 322, 328 (4th Cir. 2001).

The terms "employ", "use" "persuade," "induce," and "entice" are not statutorily defined.  Being words of common usage, courts have accorded them their ordinary meaning. *See, e.g., Engle*, 676 F.3d at 412 n.3 (discussing "persuade," "induce," and "entice."); *see also United States v. Sirois*, 87 F.3d 34, 41 (2d Cir. 1996) (discussing "use").  With respect to "persuade," "induce," and "entice," the Engle court noted "the words are effectively synonymous, and the idea conveyed is of one person leading or moving another by persuasion or influence, as to some action [or] state of mind." *Id.*  As to the word "use," the *Sirois* court described its ordinary meaning to include "to avail oneself of, and to carry out a purpose or action by means of." 87 F.3d at 41.

6.    The Term "sexually explicit conduct"

"Sexually explicit conduct" is defined to include, inter alia, actual or simulated masturbation or the lascivious exhibition of the genital or pubic area of any person. *See* 18 U.S.C. § 2256(2)(A). "Lascivious" has been defined as "exciting sexual desires; salacious." *United States v. Williams*, 444 F.3d 1286, 1299 (11th Cir. 2006), *rev'd on other grounds*, 553 U.S. 285 (2008).  In determining whether a depiction constitutes a lascivious exhibition of the genitals or pubic area, courts consider the following factors:

1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4) whether the child is fully or partially clothed, or nude;

5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986)); *United States v. Horn*, 187 F.3d 781, 789 (8th Cir. 1999); *United States v. Amirault*, 173 F.3d 28, 32 (1st Cir. 1999). A visual depiction need not involve all of these factors to be a lascivious exhibition of genitals. *United States v. Whorley*, 400 F. Supp. 2d 880, 884 (E.D. Va 2005).

 7. <u>The Term "producing"</u>

The Court in *United States v. Fadl*, 498 F.3d 862 (8th Cir. 2007) pointed out that Congress intended a broad definition of "producing" that may well transcend the typical meaning of that term:

> The fact that "producing" is retained in the definition and placed alongside other terms indicates that Congress intended to retain a non-technical definition of the term "producing" (that is, in the sense of creating or making), but also sought to expand its scope to include activities that may not be generally considered to fall within the typical meaning of the term. We therefore conclude that list of terms in the definition reflects Congress's intention to enact a broad definition of "producing" that encompasses the varied means by which an individual might actively participate in the creation and distribution of child pornography.

UNITED STATES' TRIAL BRIEF - 19

*Id.* at 866-67.

8.    The Terms "interstate or foreign commerce"

To meet its burden under the interstate or foreign commerce prong, the United States must establish any one of the following: (a) the Defendant knew or had reason to know that such visual depiction would be transported using any means or facility of interstate or foreign commerce; or (b) the Defendant knew or had reason to know that such visual depiction would be transported in or affecting interstate or foreign commerce; or (c) such visual depiction was produced using materials that have been mailed or shipped or transported in and affecting interstate or foreign commerce by any means, including by computer; or (d) the visual depiction was actually transported using any means and facility of interstate and foreign commerce; or (e) the visual depiction was actually transported in and affecting interstate and foreign commerce.

Although only required to establish one prong of the interstate or foreign commerce nexus, the United States is able to establish all prongs as described more fully below:

a.    *The Defendant knew or had reason to know that the visual depiction would be transported using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce.*

In this case, the Defendant knew that Persons A and B lived outside of Washington State.  The Defendant also intentionally traveled to other states to use Persons A-F to produce sexually explicit images.  The evidence will also establish that the images and videos produced by the Defendant of Persons A-F were located in the Eastern District of Washington on digital devices the Defendant had used to create and/or possess the images with.  Thus, after the Defendant produced the child pornography images and videos outside of the Eastern District of Washington he transported them back to the Eastern District of Washington.  Accordingly, he knew or had reason to know that any visual depiction he produced would be transported in interstate commerce.

UNITED STATES' TRIAL BRIEF - 20

b.  *The visual depictions were actually transported using any means and facility of interstate commerce.*

Again, not only will the evidence establish that the Defendant intended to bring the child pornography images and videos into the Eastern District of Washington, but that the Defendant was the one who actually transported the images.  Accordingly the, the images were actually transported in interstate commerce.

In the context of a child pornography trial, circumstantial evidence tying particular images of child pornography to the Internet is sufficient to establish that the images were transported in interstate commerce.  *See United States v. Runyan*, 290 F.3d 223, 242 (5th Cir. 2002), *United States v. Carroll*, 105 F.3d 740, 742 (1st Cir. 1997) (transmission of photographs by means of the Internet is tantamount to moving photographs across state lines and thus constitutes transportation in interstate commerce).

c.  *Such visual depiction was produced using materials that have been mailed or shipped or transported in and affecting interstate or foreign commerce by any means, including by computer.*

Finally, the child pornography images and video were produced using materials that had been transported in interstate or foreign commerce.  Specifically, the pornographic images of Persons A-E were found on the Defendant's hard drive (Seagate) in his HP computer, which was manufactured in China (as well as being found on numerous other foreign-made devices and made with numerous other foreign devices).  Courts have held that storage of child pornography on devices manufactured in interstate or foreign commerce is sufficient to satisfy the "produced using materials" prong of 2251(a). *See, e.g., United States v. Mugan*, 441 F.3d 622, 628 (8th Cir. 2006) (storage of offending images on electronic media storage previously transported in interstate commerce sufficient for Section 2251(a) conviction); *United States v. Zimmerman*, 529 F. Supp. 2d 778, 781 (S.D. Tex. 2007) (sustaining conviction under 2251 where the images of child pornography the defendant produced were found on CDs that traveled in interstate commerce).

**C.    Transportation with Intent to Engage in Sexual Contact with a Child, in violation of 18 U.S.C. § 2423(a) (Counts 26, 28)**

    1.   <u>Statute and Relevant Counts</u>

Counts 26 and 28 charge the Defendant with Transportation of Person A from Mississippi to the Eastern District of Washington with Intent to Engage in Sexual Contact with a Child, in violation of 18 U.S.C. § 2423(a) which provides:

> A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce . . . with intent that the individual engage . . .in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2423(a).  The Counts of Transportation of Person A from Mississippi to the Eastern District of Washington with Intent to Engage in Sexual Contact with a Child, in violation of 18 U.S.C. § 2423(a), are summarized in the table below:

| Summary of Counts of Transportation with Intent to Engage in Sexual Contact with a Child | | | |
|---|---|---|---|
| **Count** | **Date** | **Travel** | **Person/Age** |
| 26 | 1/11 | MS to EDWA | A / minor |
| 28 | 6/11 | MS to EDWA | A / minor |

    2.   <u>Elements of Transportation with Intent to Engage in Sexual Contact with a Child</u>

In order for the Defendant to be found guilty of the charge, the Government must prove each of the following elements beyond a reasonable doubt:

First:        The defendant transported "Person A" from Mississippi to the Eastern District of Washington;

Second:     The defendant did so with the intent to engage in illegal sexual activity with "Person A" to wit: production of child pornography as alleged in Counts 26 and/or Count 28; and

Third:        That person A was under the age of eighteen years at the time the defendant transported "Person A" from one state to another;

Ninth Circuit Model Jury Instruction No. 8.193(2010)( modified).

In this case, the United States' evidence will prove that the Defendant knowingly transported or caused to be transported, Person A across state lines with the intent that he engage in the production of child pornography and that person A was, in fact, under the age of eighteen years.  This evidence will include, among other things, the victims' testimony, as well as physical and documentary evidence such as credit card receipts, travel records and meta data (such as when the image was created and what device was used to create the image) from images of child pornography of person A.

　　　3.    Transportation Across State Lines

The United States must show that state lines were crossed, and that the Defendant either transported the victim (Person A) across state lines or caused him to be moved from one state to another.  *United States v. Green*, 554 F.2d 372, 376 (9th Cir. 1977).

　　　4.    Intent of Transportation of Minor

The United States must prove beyond a reasonable doubt that the Defendant formed the intent to use Person A to engage in a sexual activity, production of child pornography, before the Defendant transported or moved the minor across state lines. It is not necessary for the Government to prove that production of child pornography was the sole purpose for any transportation from one state to another.  A person may have several different purposes or motives for such travel and each may prompt, in varying degrees, the act of making the journey.  The Government must prove, however, that a significant or dominant purpose of the travel from one state to another was to have the minors transported engage in prostitution. *See Malley, Grenig, & Lee Federal Jury Practice and Instructions*, " 60.03; 60.07 (5th ed. 2000) [Transportation for Prostitution - The Intent Required];   *United States v. Kinslow*, 860 F.2d 963, 967

(9th Cir.), *cert. denied,* 110 S. Ct. 96 (1988); *United States v. Fox*, 425 F.2d 996, 999 (9th Cir. 1970); *United States v. Vang*, 128 F.3d 1065, 1068 (7th Cir. 1997); *United States v. Ellis*, 935 F.2d 385, 389-90 (1st Cir. 1991).

The requisite intent may be proved by circumstantial evidence, including "the conduct of the parties both before and within a reasonable time after the transportation." *Green*, 554 F.2d at 375.

5.    The Term "sexual activity"

In this case, "sexual activity" is defined as the production of child pornography as 18 U.S.C.§ ' 2427 provides for the inclusion of production of child pornography in the definition of sexual activity. Specifically, the third superseding indictment specifies that for purposes of Counts 26 and 28, "the sexual activity" is specified in the indictment as production of child pornography. Count 26 charges the Defendant with transportation with intent to engage in a sexual contact with a child (Victim "A") in or about January 2011. The production of child pornography related to Count 26 is contained in Count 27, which charges the Defendant with production of child pornography of Victim A on or about January 7, 2011, through on or about January 10, 2011. (ECF 80, pg. 12). Similarly, Count 28 charges the Defendant with transportation with intent to engage in a sexual contact with a child (Victim "A") in or about June 2011. (ECF 80, pg. 12). The production of child pornography related to Count 28 is contained in Count 29, which charges the Defendant with production of child pornography on or about July 5, 2011. (ECF 80, 0g. 13).

6.    Mistake of Age of Victim Not A Defense

With respect to Counts 26 and 28 of the Third Superseding Indictment, the Government does not have to prove that the Defendant knew that the individual he transported from one state to another was under the age of eighteen at the time he was transported. That is, the Defendant's knowledge of the age of the individual or individuals transported is not part of the proof required of the Government in order to sustain a conviction for transporting minors for the purpose of prostitution.

Furthermore, that the Defendant may have been mistaken about, or ignorant of the age of the transported individual is not a defense.  The law places the risk of such mistake or ignorance on the Defendant.  *See United States v. Taylor*, 239 F.3d 994, 997 (9th Cir. 2001) (it is not a defense to the crime of transporting a minor for purposes of prostitution that the Defendant was ignorant of the child's age); *see also United States v. Hamilton*, 456 F.2d 171, 172-173 (3d Cir. 1972) (although 18 U.S.C. § 2423 provides more severe sentence when victim is under eighteen …knowledge that the girl is under eighteen . . . is not part of the proof requisite by the Government in order to sustain a conviction); *accord United States v. Scisum*, 32 F.3d 1479, 1485-86 (10th Cir. 1994).  If someone knowingly transports a person for the purposes of prostitution or another sex offense, the transporter assumes the risk that the victim is a minor, regardless of what the victim says or how the victim appears.  *Taylor* at 997.

      7.   <u>Consent is Not a Defense</u>

With respect to Counts 26 and 28 the United States anticipates the evidence will establish that Person A masturbated himself and that the Defendant took photographs and video of this on two different occasions.  The issue of whether Person A consented to the production of these acts is irrelevant.  Person A was 15 and 16 years old at the time the Defendant caused him to be transported from Mississippi to the Eastern District of Washington, Person A was under the age 18 on both occasions, and consent of a minor is not a defense to a violation of 18 U.S.C. § 2423(a).

Whatever the degree of the victim's willingness to travel or to commit commercial sex acts may have been, it does not vitiate the illegality of the Defendant's conduct.  *See United States v. Rashkovski*, 301 F.3d 1133 (9th Cir. 2002) (in prosecution under 18 U.S.C. § 2422(a), defendant's intent that victims serve as prostitutes was sufficient proof, regardless of the victim's actual intent); *United States v. Jones,* 808 F.2d 561 (7th Cir. 1986); *United States v. Lowe*, 145 F.3d 45, 52 (1st Cir. 1998) (consent is a defense to kidnapping but not to a Mann Act charge); *United States v. Pelton*, 578 F.2d 701, 712-13 (8th Cir.), *cert. denied*, 439 U.S. 964 (1978).

**D.    Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2) (Count 34)**

1.    <u>Statute and Relevant Count</u>

Count 34 charges the Defendant on or about October 12, 2004 and continuing through October 18, 2014 with Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2) which provides:

> Any person who knowingly receives or distributes--
>
> (A) any child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer; or
>
> (B) any material that contains child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

18 U.S.C. § 2252A(a)(2).

2.    <u>Elements of Receipt of Child Pornography</u>

In order to prove the crime of Receipt of Child Pornography, the following elements must be established beyond a reasonable doubt:

First:    on or about October 12, 2004, and continuing through October 18, 2014, within the Eastern District of Washington, the Defendant knowingly received material that contained images of child pornography;

Second:    that the material had been mailed, shipped or transported in interstate or foreign commerce by any means, including by computer, or that the material was produced using materials that had been mailed, shipped or transported in interstate or foreign commerce by any means, including by computer; and

Third:    that at the time he possessed the material, the Defendant believed that such images constituted child pornography.

3.    The Term "receipt"

The common Oxford English Dictionary definition of the word "receive" is: "to take into one's possession;" to take delivery of." *See United States v. Mohrbacher*, 182 F. 3d 1041, 1048 (9th Cir. 1999); BLACK'S LAW DICTIONARY 1268 (6[th] ed. 1990)('To take into possession and control; accept custody of; collect.')." Id.  The Ninth Circuit has held that: "An individual who downloads material takes possession or accepts delivery of the visual image; he has therefore certainly received it.  In fact, guides to computer terminology often analogize downloading to receiving information and uploading to transmitting or sending." *Mohrbacher*, 182 F. 3d 1041, 1048 (9th Cir. 1999).

**E.    Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count 35)**

1.    Statute and Relevant Count

Count 35 charges the Defendant with Possession of Child Pornography on or about October 18, 2014, in violation of 18 U.S.C. § 2252A(a)(2), which provides:

> Any person who knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer…

18 U.S.C. § 2252A(a)(5)(B).

2.    Elements of Possession of Child Pornography

In order to prove the crime of Possession of Child Pornography, the United States must establish the following elements beyond a reasonable doubt:

First:        On or about October 18, 2014, in the Eastern District of Washington, the Defendant knowingly possessed material that

contained images of child pornography, including children under the age of twelve years old;

Second:    That the material had been mailed, shipped or transported in interstate or foreign commerce by any means, including by computer, or that the material was produced using materials that had been mailed, shipped or transported in interstate or foreign commerce by any means, including by computer; and

Third:    That at the time he possessed the material, the Defendant believed that such images constituted child pornography.

### 3. The Term "possession"

A person has possession of something if the person knows of its presence and has physical control of it, or knows of its presence and has the power and intention to control it. 9th Cir. Crim. Jury Inst. 3.18 (2000). *See United States v. Cain*, 130 F. 3d 381, 382-84 (9th Cir. 1997); *United States v. Terry*, 911 F. 2d 272, 280 (9th Cir. 1990).

The United States expects FBI SA McEuen will testify that approximately one million images of child pornography where found on the Defendant's computers and other digital devices.

## F. Proof Relating to Both Receipt and Possession of Child Pornography Charges

### 1. The Term "knowingly"

Many of the terms used in the elements for both the charge of Receipt (Count 34) and Possession of Child Pornography (Count 35), such as "child pornography," "minor," "sexually explicit conduct," "graphic", "lascivious exhibition", "visual depiction," "indistinguishable" and "interstate and foreign commerce," have been statutorily defined and these terms have been defined in the Jury instructions provided by the United States. Several of the terms involved have received further interpretation by case law for instance the terms "knowingly" and "receipt".

UNITED STATES' TRIAL BRIEF - 28

The term "knowingly" has been defined as follows: An act is done "knowingly" if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.  In this case, the term "knowingly" extends to awareness that the material depicted a minor engaging in sexually explicit conduct.  The United States must show that the Defendant had knowledge of the general nature of the contents of the material.  Although the Defendant need not know the specific content of the material or the actual age of the underage subject, the Defendant must have had awareness, notice, reason to know, or a belief or ground for belief warranting further inspection, that the material contained a visual depiction of a minor engaging in sexually explicit conduct.

A Defendants' knowledge may be shown by direct or circumstantial evidence, or both.  Eyewitness testimony of the Defendant's receipt or viewing of illegal images of child pornography is not necessary to prove his awareness of its contents; the circumstances may warrant the inference that he was aware of what the material depicts.  Furthermore, the Defendant's belief as to the legality or illegality of the material is not controlling.  9th Cir. Crim. Jury Inst. 3.18 (2000); *Devitt & Blackmar, Federal Jury Practice and Instructions* (4th Ed. 1990), §36.15; *United States v. X-Citement Video, Inc.*, 115 S.Ct. 464 (1994).

2.   Proof of Minor Children

The United States is required to prove, for both the charges of receipt and possession, the child depicted in the image is a minor under the age of eighteen.  No expert is needed to prove that the images depict an actual minor.  This is a question for the Jury, and the Government is not required to present an expert to prove that the images depict an actual minor.  *See United States v. Salcido*, 506 F.3d 729 (9th Cir. 2007*), cert. denied*, 128 S.Ct. 1918 (2008); *United States v. Nelson*, 38 Fed.Appx. 386, 392 (9th Cir.2002) (there is no requirement that expert testimony be presented in child pornography cases to establish the age of children in the pictures), *United States v. Rodriguez-Pacheco,* 475 F.3d 434 (1st Cir. 2007)(Government does not have to

offer expert testimony that image is of a real child in order to prove the Defendant guilt beyond a reasonable doubt.); *United States v. Riccardi*, 405 F.3d 852 (10th Cir. 2005)(an expert witness is not necessary to establish that the people in the images are minors); *United States v. Becht*, 403 F.3d 541, 549-50 (8th Cir. 2005)(We have held that a Jury may find that images depict real children based only on a review of the images themselves...And as the Supreme Court itself observed in Free Speech Coalition, the hypothesis that virtual images are indistinguishable from real ones is somewhat implausible because [i]f virtual images were identical to illegal child pornography, the illegal images would be driven from the market by the indistinguishable substitutes.); *United States v. Sims*, 428 F.3d 945, 956 (10th Cir. 2005)("[O]ur cases since Free Speech Coalition have consistently held that juries can review the images themselves to determine whether real children are depicted."); *United States v. Slanina*, 359 F.3d 356, 357 (5th Cir. 2005)("...the Government was not required to present any additional evidence or expert testimony to meets its burden of proof to show that the images downloaded by Slanina depicted real children, and not virtual children."); *United States v. Deaton*, 328 F.3d 649 (6th Cir. 2004)(Jury can determine whether children in pornography are real); *United States v. Farrelly*, 389 F.3d 649 (6th Cir. 2004)(Jury had access to images and could decide whether children depicted in images were real).

The Government will present evidence that some of the child pornography that the Defendant possessed and received depicted real, identified child pornography victims (Persons A-F).  In addition to the testimony about identified victims, the Jury should be instructed that it can decide, just by viewing the other child pornography at issue (which in this case unambiguously depicts children under the age of 18), that it depicts (a) real victims (b) under the age of 18.  *See United States v. Kimler*, 335 F.3d 1132, 1144 (10th Cir.), *cert. denied*, 540 U.S. 1083 (2003) (holding that juries are capable of distinguishing between real and virtual images depicted in graphic image files, and that expert testimony was not necessary to prove that images depict

prepubescent children, as "[t]he images themselves provided sufficient evidence of prepubescence to support the sentence enhancement").

3.   Proof of Interstate Travel

There is ample evidence that the Defendant produced, possessed, and received child pornography in and affecting interstate commerce. First, the Defendant used the Internet to receive child pornography, which is, standing alone, sufficient to satisfy the Government's burden on the interstate commerce element. Second, the computer equipment used by the Defendant to produce, store, copy, and transfer child pornography was manufactured outside of the Eastern District of Washington. Third, meta data from child pornography images and witnesses will testify that some of the child pornography the Defendant received and possessed depicted known victims, and was originally produced outside of the Eastern District of Washington.

The Government must prove that the Defendant did knowingly possess an image of child pornography that had previously traveled in interstate commerce by any means, including by computer or was produced with an item that traveled in interstate or foreign commerce. The United States will establish the interstate element of each of the crimes charged by establishing that some of the child pornography images traveled in interstate and foreign commerce, as evidence on the Defendant's computers indicates he searched for and saved images of child pornography from servers located outside of the United States. In addition, the United States will prove that the images were "produced" and stored using equipment that had traveled in interstate commerce. In this case, the Defendant's computer hard drive was manufactured in Taiwan. The Government can satisfy the interstate commerce requirement of child pornography statutes by showing that the computer equipment on which the images are stored traveled in interstate commerce, regardless of how the images themselves were originally produced. *United States v. McCalla*, 545 F.3d 750 (9th Cir. 2008). *See also United States v. Maxwell*, 446 F.3d 1210, 1211-12, 1219 (11th Cir. 2006).

Transportation in interstate or foreign commerce can be accomplished by any means, including by a computer. 18 U.S.C. § 2251(b). *See United States v McCalla,* 545 F.3d 750, 753–56 (9th Cir.2008) (applying § 2251(a) to noncommercial intrastate production did not violate the Commerce Clause; Congress had a broad interest in preventing sexual exploitation of children and it was rational that Congress would regulate intrastate production), *cert. denied*, 129 S. Ct. 1363 (2009).

## IV.    EVIDENTIARY ISSUES

### A.    Admissibility and Showing of Child Pornography Images.

The United States intends to offer as evidence and display a representative sample of the over one million of child pornography that the Defendant produced and/or received from sources via the Internet and that he stored on his computers and digital evidence.  The images the United States intends to introduce into evidence were extracted from the Defendant's computers and/or digital media and will be copied onto a sheet of paper so the Jury can properly examine the images to determine if they are images of child pornography and/or will be displayed in the case of video evidence to the Jury.  In addition, the related data from the images has been extracted from the images, indicating the date and file name and/or path where the image was located or saved by the Defendant.  Some of the still images depicting the sexual exploitation of minors are very graphic, and the United States respectfully requests that the Court advise the prospective members of the Jury of this during Jury selection.  The United States only intends to introduce and/or use the child pornography images with certain witnesses and can advise the Court before the witness testifies whether or not graphic images will be shown to a witness; in the Government's experience the Jury also appreciates knowingly approximately when such images will be shown.

The United States contends these exhibits are admissible under Federal Rule of Evidence 1002 as an original exhibit.  The Federal Rules state that:

> [i]f data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an "original".

Fed. R. Evid. 1001(3).  Thus, an accurate printout of computer data always satisfies the best evidence rule.  *See Doe v. United States*, 805 F. Supp. 1513, 1517 (D. Hawaii. 1992).  According to the Advisory Committee Notes that accompanied this Rule when it was first proposed, this standard was adopted for reasons of practicality.  While strictly speaking the original of a photograph might be thought to be only the negative, practicality and common usage require that any print from the negative be regarded as an original.  Similarly, practicality and usage confer the status of original upon any computer printout.  *Advisory Committee Notes, Proposed Federal Rule of Evidence 1001*(3) (1972).

As to the number of images shown to the Jury, given the very high burden of proof generally, and that the Government will need to prove the Defendant acted intentionally and knowingly in committing both charged offenses, and that the Jury must make a determination of whether the images are child pornography, the Government should be given wide latitude in deciding what is an appropriate number of images to be given to the Jury.  Since the Government's burden is extremely high - as the defense will argue in its closing - the Government should "not be restricted to a modest quantum of evidence that will support the indictment."  *United States v. Gallo*, 543 F.2d 361, 365 (D.C. Cir. 1976).

If these exhibits are admitted, the United States intends to "publish" those images to the Jury by using the courtroom Elmo and through related video technology.  When the United States displays the child pornography images utilizing Elmo and related video technology, the United States respectfully requests that none of the computer screens in the court room face the gallery.  The Defendant has had an opportunity to view all of the child pornography images on the Defendant's computer and will have an opportunity to view all of the Government's Exhibits containing child pornography images (including video evidence).

UNITED STATES' TRIAL BRIEF - 33

1    The Defendant may argue the images should not be shown to the Jury, and/or

2    may offer to stipulate that the images are of child pornography.  The United States

3    notes that this issue has been addressed by this Court in a previous case involving a

4    similarly situated Defendant.  In *United States v. Zacherle*, 2008 WL5000145 (E.D.

5    Wash. Nov. 20, 2008) a Defendant's motion to preclude the Government from

6    showing images of child pornography to the Jury was denied, despite the fact that the

7    Defendant offered to stipulate.  This Court reasoned that the "government bears the

8    burden of proving each element of the offense and publishing select images to the Jury

9    is the best method."  (*citing United States v. Sewell*, 457 F.3d 841 (8th Cir.

10   2006)(finding that the district court abused its discretion in accepting a defendant's

11   offer to stipulate and forbidding the Government from publishing a representative

12   sample of images of child pornography to the Jury).

13   **B.    Admissibility of Computer Files**

14        In this case, the Government intends to introduce documents reflecting the file

15   structure of some of the computer files that have been extracted from the Defendant's

16   digital devices and will offer testimony about those files, including the files names,

17   locations, Internet search history, and some Internet bookmarks saved.  The standard

18   for authenticating computer records is the same for authenticating other records and

19   does not vary simply because the record happens to be originally in electronic form.

20   *United States v. Vela*, 673 F.2d 86, 90 (9th Cir. 1982).  The witness who testifies to

21   the authenticity of the computer record need not have special qualifications and need

22   not have programmed the computer or even understand the technical operation of a

23   computer.  *United States v. Salgado,* 250 F.3d 438, 453 (6th Cir. 2001) ("it is not

24   necessary that the computer programmer testify in order to authenticate the computer

25   generated records.")  Instead, the witness need only have first-hand knowledge of the

26   facts to which they testify, such as examining or seizing the computer from which the

27   records were obtained.  *United States v. Whitaker*, 127 F.3d 595, 601 (7th Cir. 1997).

28

The authenticity of the computer program itself is also generally not a bar to the admission of evidence derived from the use of such a program.  Such a challenge is defeated by providing sufficient facts to support a finding that the records are trustworthy and the opposing party is afforded the opportunity to inquire into the accuracy of such records.  *United States v. Briscoe*, 896 F.2d 1476 1494-95 (7th Cir. 1990).  Typically, the reliability of a computer program can be established by showing that the users of the program actually do rely upon it on a regular basis.  *Id*. at 1494.

**C.    Proof of Receipt and Possession of Child Pornography Images Found in Unallocated Space**

The evidence in this case will establish that the Defendant attempted to delete the images of child pornography he had produced, downloaded and received from the Internet from his desktop computer.  Despite the fact that the Defendant had attempted to delete the image files, the United States' digital forensic examiners recovered the images of child pornography in the unallocated space on the Defendant's computer and/or from the "recycle bin", which is the portion of the hard drive where files are stored if they are deleted by the user and/or placed in anticipation of deletion.

In *United States v. Romm,* 455 F.3d 990 (9th Cir. 2006), *cert. denied*, 127 S.Ct. 1024 (2007) the Ninth Circuit addressed the issue of whether child pornography images in unallocated space or temporary Internet files, were  sufficient evidence of knowing possession and receipt of child pornography.  In *Romm*, the Defendant admitted to viewing child pornography online, saving images to his hard drive, but then deleting them soon thereafter.  Forensic analysis confirmed the Defendant's story but also showed that he had viewed images that were automatically saved in his Internet cache and then deleted all images stored there.  The Defendant appealed convictions for knowingly possessing and receiving the images and the Ninth Circuit upheld his conviction, stating: "In the electronic context, a person can receive and possess child pornography without downloading it, if he or she seeks it out and exercises dominion and control over it."  *Id.* at 998.  Evidence sufficient to establish

that the Defendant knowingly possessed and received child pornography was presented in *Romm's* case, they concluded, via his exercise of control over the images in seeking them out online, viewing them, temporarily saving some of them, enlarging some of them and, ultimately, deleting all of them.

In *United States v. Pruitt*, 638 F.3d 763 (11th Cir. 2011), the court affirmed the Jury's verdict of receipt of child pornography on the Defendant's work computer and home computer when child pornography images were only recovered on the computer's cache and unallocated space.  The Court held that images need not be saved on the hard drive to knowingly receive such images.  Because the Defendant used search terms to seek out the images on the Internet and looked for the images that he knew existed in folders on his employer's network, the Court held the Defendant knowingly received such images on his computers.

In *United States v. Shiver*, 305 F. App'x 640 (11th Cir. 2008), the Court rejected the Defendant's argument that the Government did not prove knowing possession of the child pornography images where the Government put forth direct and indirect evidence that the Defendant possessed the images, specifically (i) the Defendant's admissions that he had child pornography on his computer he had gotten rid of; (ii) the Defendant's reference to himself as a pedophile;(iii) Internet search terms found on the Defendant's computer that were likely to return pornographic images of children; and (iv) testimony by an expert that a virus was not a plausible explanation for the presence of child pornography on the computer.  Furthermore, the Court rejected the Defendant's argument that he did not knowingly possess the images even though all of the images had been deleted and stored in his computer's unallocated files.

In *United States v. Luken*, 515 F. Supp. 2d 1020 (D.S.D. 2007), *aff'd*, 560 F.3d 741 (8th Cir. 2009) the Court held files found in the thumbnails database were acceptable to show that the Defendant purposely saved or downloaded child

pornography images onto computer's hard drives and viewed the images in a thumbnail view in order to establish knowing possession of child pornography.

Other Courts have also sustained convictions for possession of files located wholly in a computer's unallocated space. *See United States v. McArthur*, 573 F.3d 608, 614 15 (8th Cir. 2009) (upholding conviction where forensic evidence included deleted child pornography files and evidence of visits to child pornography websites, all located in unallocated space); *United States v. Stout*, 509 F.3d 796, 798 (6th Cir. 2007) (upholding conviction where all child pornography found on computer was in unallocated space).

In this case, the United States intends to present evidence of the Defendant's intentional and knowing production, receipt and possession of child pornography based on not only the child pornography images found both in allocated and unallocated space on his digital devices, and also by testimony from some of the victims, evidence of the Defendant's Internet search history, and websites he visited.

**D.    File Names**

File names indicative of child pornography are highly relevant to prove the Defendant's intent. *See, e.g., United States v. Ganoe*, 538 F.3d 1117, 1123 (9th Cir. 2008) (titles of child pornography files relevant to rebut the Defendant's lack of intent defense), *United States v. Becht*, 267 F.3d 767, 774 (8th Cir. 2001) (Defendant knowingly possessed child pornography since he had to view either the images or their explicit file names when sorting the files on his computer); *United States v. Carani*, 492 F. 3d 867 (7th Cir. 2007) (*en banc*) (Jury instructed that explicit file names could be evidence of the Defendant's deliberate avoidance of truth of contents in child pornography images); *United States v. Payne*, 341 F.3d 393, 403 04 (5th Cir. 2003) (upholding Jury determination that the Defendant knowingly received child pornography based on the number of images with titles suggestive of child pornography).

Here, the United States intends to introduce evidence that the Defendant maintained a highly organized file system of child pornography images and that the Defendant created a specific file structure to curate his collection of images. Also the fact that the Defendant attempted to delete the images of child pornography from his computer is evidence of his consciousness of guilt and the United States intends to propose a Jury instruction on consciousness of guilt as noted below.

**E.    Admissibility of Evidence of Attempting Destruction of Evidence and Jury Instruction of Consciousness of Guilt**

In this case, the evidence will establish that the Defendant attempted to delete some of the images and videos from his digital devices, destroyed certain evidence (including a Toshibia laptop computer that he removed the hard drive from and tossed into a dumpster at an apartment complex in Colbert, Washington) and threw away other evidence, including additional digital devices, in another dumpster in Spokane, Washington.

Attempts to dispose of evidence are evidence of consciousness of guilt. Thus, a Jury instruction would be appropriate on this issue. *See Ashcraft v. Tennessee*, 327 U.S. 274, 277 (1946) ("[w]ilful concealment of material facts has always been considered as evidence of guilt."); *United States v. Hensley,* 574 F.3d 384, 391 (7th Cir. 2009) (destruction of "chat files" evidence of consciousness of guilt in solicitation case); *United States v. Burrous*, 147 F.3d 111, 117 (2d Cir. 1998) (throwing box of cash from window of car during arrest permitted inference of consciousness of guilt); *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir. 1994) (permitting inference that destroyed evidence would have been unfavorable to party destroying evidence); *United States v. Hackett*, 638 F.2d 1179, 1186 (9th Cir. 1980) (disposal of evidence permit inference of consciousness of guilt); *Rivers v. United States*, 270 F.2d 435, 438 (9th Cir. 1959) (dismemberment, disposal of body is evidence of consciousness of guilt in murder case). Notably, efforts to destroy evidence of the source of the Defendant's funds, in a drug case, is an act in furtherance of the

1  conspiracy, as well as proof of consciousness of guilt.  *United States v. Vogel*, 132

2  Fed.Appx. 119, 121 (9th Cir. 2005).

3  **F.    Closure of the Courtroom**

4      A trial Court may in the interest of the fair administration of justice, impose

5  reasonable limitations on access to a trial.  "[T]he question in a particular case is

6  whether that control is exerted so as not to deny or unwarrantedly abridge . . . the

7  opportunities for the communication of thought and the discussion of public questions

8  immemorially associated with resort to public places.  *Press Enterprise Co. v.*

9  *Superior Court*, 464 U.S. 501, 511 n.4 (1984).  The protection of minor witnesses and

10  victims is a compelling governmental interest.  Whether closure of a courtroom during

11  testimony of a minor witness or victim is necessary must be determined on a case-by-

12  case basis.  *United States v. Broussard*, 767 F. Supp. 1545, 1546-47 (D. Or. 1991).

13      The test for determining whether closure of a courtroom is warranted is (1)

14  whether closure serves a compelling interest; (2) whether there is a substantial

15  probability that, in the absence of closure, this interest would be harmed; and (3)

16  whether any alternatives exist that would adequately protect that interest.  *Id.* at 1547

17  n.4.  Among the factors to be considered in determining whether to close a courtroom

18  are the minor victim's age, psychological maturity, and understanding; the nature of

19  the crime; the desires of the victim; and the interests of parents and relatives.  *Globe*

20  *Newspaper Co. v. Superior Court*, 457 U.S. 596, 608 (1982).

21      Here, given the minor victims at issue (as well as the victims who were minors

22  when they were victimized), closing the courtroom is plainly appropriate when they

23  and/or their parents testify.

24  **G**.    **Chain of Custody**

25      Admissibility of physical objects connected with the commission of a crime is

26  determined by a showing that the object is in substantially the same condition as when

27  the crime was committed (or the object seized).  Factors to be considered are the

28  nature of the article, the circumstances surrounding its preservation and custody, and

the likelihood of intermeddlers tampering with it. *United States v. Stearns*, 550 F.2d 1167, 1170 (9th Cir. 1977). When the exhibits are at all times in official custody, a presumption of regularity attends the discharge of official duties. *See United States v. Harrington*, 923 F.2d 1371, 1374 (9th Cir.), *cert. denied*, 502 U.S. 854 (1991).

It is not necessary that the Government establish all links in the chain of custody of an item or call all persons who were in a position to come into contact with it. *Gallego v. United States*, 276 F.2d 914, 917 (9th Cir. 1960). Alleged gaps in a chain of custody go to the weight of the evidence rather than its admissibility. If the trial judge is satisfied that there is a reasonable probability that the article has not been changed in important aspects, he may permit its admission and his decision will not be overturned absent a clear abuse of discretion. *United States v. Lampson*, 627 F.2d, 63, 65 (7th Cir. 1980). Evidence regarding the chain of custody concerning an item of seized evidence goes to the weight as opposed to the admissibility of the evidence. *United States v. Robinson*, 967 F.2d 287, 292 (9th Cir. 1992).

In this case, the United States expects that the Defendant may attempt to attack the chain of custody of certain items of evidence. Based on the foregoing, the United States expects the Defendant's attacks to fail.

**H.    Birth Certificates**

Statements contained in birth certificates are admissible evidence and fall within the hearsay exceptions contained in Fed. R. Evid. 803(9) and Fed. R. Evid. 803(12). Certified copies of these documents are self-authenticating. Fed. R. Evid. 902(4).

In this case, the Government will seek to introduce in evidence a certified copy of the birth certificates of Victims A-E to prove that were under eighteen years of age at the time of the charged offenses. The United States will also continue to discuss stipulations as to age as appropriate.

## I.    Charts and Summaries

The Government will seek to introduce a summary chart of the counts in the Indictment related to aggravated sexual assault that includes the count, date, travel, age of person at the time of the offense and travel records in the form of airline and expense records, including hotel receipt.  The Government intends to have FBI Financial Analyst Jennifer Boswell testify to her review of the records and Indictment and birth certificates to prepare said chart.

The Government also may introduce or use at trial summaries and charts of evidence contained on the Defendant's computer hard drive under Federal Rule of Evidence 1006.  The Government may also use some of its charts and summaries during the opening statement, the presentation of its case in chief and/or during closing argument.  These charts and summaries will substantially assist the Jury in understanding the Government's proof in this case.

It is well-established that the trial Court in its discretion may allow the presentation of summary evidence to guide and assist the Jury in understanding and judging the factual controversy.  *See*, Fed.R.Evid. 1006; *United States v. Skalicky*, 615 F.2d 1117, 1120-1121 (5th Cir. 1980); *United States v. Cooper*, 464 F.2d 648, 656 (10th Cir. 1972).  A foundation for the admission of each chart and summary will be laid through the testimony of various witnesses, who will testify that the charts and summaries accurately reflect information contained in documents already in or to be admitted into evidence.  *See United States v. Lemire*, 720 F.2d 1327, 1349 (D.C. Cir. 1983); *United States v. Pollack*, 417 F.2d 240, 241 (5th Cir. 1969).

Because of the voluminous and highly technical nature of some of the computer evidence in this case, the Government intends to rely on the testimony of FBI Special Agents McEuen to summarize and analyze the contents of the information retrieved from the defendant's computer, as well as testimony from forensic agents/examiners identified in the United States' previously filed notice potential expert testimony.  One or more of the various forensic reports, or parts of them, will be offered as evidence.

Federal Rule of Evidence 1006 provides that "the contents of voluminous writings, recordings or photographs which cannot be conveniently examined in Court may be presented in the form of a chart, summary or calculation." The Ninth Circuit has recognized that summary evidence "can help the Jury organize and evaluate evidence which is factually complex and fragmentally revealed in the testimony of the multitude of witnesses." *United States v. Shirley*, 884 F. 2d 1130, 1133 (9th Cir. 1989), *quoting United States v. Lemire*, 720 F. 2d 1327, 1348 (D.C. 1983); *see also United States v. Meyers*, 847 F. 2d 1408, 1412 (9th Cir. 1988) (approving the use of a summary witness where the sequence of events was confusing and the chart contributed to the clarity of presentation).

Although the underlying materials upon which the summary testimony is based must be "admissible," they need not be actually admitted into evidence. *United States v. Meyers*, 847 F. 2d at 1412. The foundation for admission of such a summary is simply that the records are voluminous and that in-Court examination would be inconvenient. *United States v. Duncan*, 919 F. 2d 981, 988 (5th Cir. 1990).

Fed. R. Evid. 1006 provides that the contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in Court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by the parties at a reasonable time and place. The Court may order that they be produced in Court. The Advisory Committee Notes to Rule 1006 further add that: "The admission of summaries of voluminous books, records, or documents offers the only practicable means of making their contents available to judge and Jury. The rule recognized this practice, with appropriate safeguards."

A chart or summary may be admitted as evidence where the proponent establishes that the underlying documents are voluminous, admissible and available for inspection. *See United States v. Meyers*, 847 F.2d 1408, 1411-1412 (9th Cir. 1988); *United States v. Johnson*, 594 F.2d 1253, 255-1257 (9th Cir.), *cert. denied*, 444

UNITED STATES' TRIAL BRIEF - 42

1  U.S. 964 (1979).  While the underlying documents must be "admissible," they need

2  not be "admitted."  *See Meyers,* 847 F.2d at 1412; *Johnson*, 594 F.2d at 1257 n.6.

3  Summary charts need not contain the defendant's version of the evidence and

4  may be given to the Jury while a Government witness testifies concerning them.  *See*

5  *United States v. Radseck*, 718 F.2d 233, 239 (7th Cir. 1983), *cert. denied*, 465 U.S.

6  1029 (1984); *Barsky v. United States*, 339 F.2d 180, 181 (9th Cir. 1964).

7  Summary charts may also be used by the Government in opening statement.

8  Indeed, "such charts are often employed in complex conspiracy cases to provide the

9  Jury with an outline of what the Government will attempt to prove."  *United States v.*

10  *De Peri*, 778 F.2d 963, 979 (3d Cir. 1985) (approving Government's use of chart),

11  cert. denied, 475 U.S. 1110 (1986); *United States v. Rubino*, 431 F.2d 284, 290 (6th

12  Cir. 1970), *cert. denied*, 401 U.S. 910 (1971) (same).

13  In addition, summary charts are admissible under Fed. R. Evid. 611(a), which

14  permits a Court to "exercise reasonable control over the mode and order of

15  interrogating witnesses and presenting evidence so as to (1) make the interrogation

16  and presentation effective for ascertainment of the truth, (2) avoid needless

17  consumption of time, and (3) protect witnesses from harassment or undue

18  embarrassment."  *United States v. Gardner*, 611 F.2d 770, 776 (9th Cir. 1980).  A

19  chart summarizing unavailable documents is also admissible under Fed. R. Evid. 1004

20  if the underlying materials are "lost or destroyed" or "not obtainable."  Fed. R. Evid.

21  1004(1) and 1004(2).

22  A summary witness may also properly testify about, and use a chart to

23  summarize, evidence that has already been admitted.  The Court and Jury are entitled

24  to have a witness "organize and evaluate evidence which is factually complex and

25  fragmentally revealed."  *United States v. Shirley*, 884 F.2d 1130, 1133-34 (9th Cir.

26  1989) (agent's testimony regarding her review of various telephone records, rental

27  receipts, and other previously offered testimony held to be proper summary evidence,

28  as it helped Jury organize and evaluate evidence; summary charts properly admitted);

*United States v. Lemire*, 720 F.2d 1327, 1348 (D.C. Cir. 1983), cert. denied, 467 U.S. 1226 (1984).

Finally, a summary witness may rely on the analysis of others where he or she has sufficient experience to judge another person's work and incorporate as his own the fact of its expertise. The use of other persons in the preparation of summary evidence goes to its weight, not its admissibility. *United States v. Soulard*, 730 F.2d 1292, 1299 (9th Cir. 1984); *see Diamond Shamrock Corp. v. Lumbermens Mutual Casualty Co.*, 466 F.2d 722, 727 (7th Cir. 1972) ("It is not necessary . . . that every person who assisted in the preparation of the original records or the summaries be brought to the witness stand").

### J.   Expert Testimony

In this case, the United States has provided a detailed Notice of Experts at ECF No. 76. The United States supplemented the Notice at ECF No. 93. The United States incorporates by reference these Notices and expects those witnesses to testify as noted in these prior filings. Generally, a witness who is "qualified as an expert by knowledge, skill and experience" may present expert testimony if his or her specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. Fed.R.Evid. 702; *United States v. Espinoza*, 827 F.2d 604, 612 (9th Cir. 1987). The admission of expert testimony is a matter within the sound discretion of the trial Court. *United Stated v. Kinsey*, 843 F.2d 383, 387-89 (9th Cir. 1988); *United States v. Anderson*, 813 F.2d 1450, 1458 (9th Cir. 1987).

An expert's opinion may be based on hearsay or facts not in evidence, where the facts or data relied upon are of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703. An expert may also provide opinion testimony even if it embraces an ultimate issue to be decided by the trier of fact. Fed. R. Evid. 704; *United States v. Fleischman*, 684 F.2d 1329, 1336 (9th Cir.), *cert. denied*, 459 U.S. 1044 (1982). The admission of expert testimony is a matter within the sound discretion of the trial Court. *United Stated v. Kinsey*, 843 F.2d 383, 387-89 (9th Cir.

1988), *United States v. Anderson*, 813 F.2d 1450, 1458 (9th Cir.1987); *United States v. Binder*, 769 F.2d 595, 601 (9th Cir. 1985).

Federal Rule of Evidence 702 provides that "if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," an expert "may testify thereto." Fed. R. Evid. 702. The Supreme Court's trilogy of cases – *Daubert*, *Kumho Tires*, and *Joiner* – governs the admissibility of scientific evidence and "impose[s] a gatekeeping duty on the district court requiring the court to screen the proffered evidence to ensure that any and all scientific testimony admitted is not only relevant, but reliable." *United States v. Alatorre*, 222 F.3d 1098, 1101 (9th Cir. 2000) (*citing Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993) (internal quotations omitted).

In order to make an admissibility determination for scientific evidence, the district Court evaluates (1) whether the theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of a particular scientific technique and the existence of standards that control the technique's operation; and (4) whether the technique is generally accepted. *Daubert*, 509 U.S. at 593-94. The reliability inquiry is a flexible test that will vary depending on the case and type of expertise at issue. *Alatorre*, 222 F.3d at 1102. "The focus, of course, must be solely on Polymerase Chain Reaction and Restriction Fragment Length Polymorphism. principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. Where a scientific method is found to be reliable, alleged imperfections in laboratory procedures go to the weight of the scientific evidence, not its admissibility. *United States v.Chischilly*, 30 F.3d 1144, 1154 (9th Cir. 1994).

The trial Court is not required to conduct a *Daubert* hearing pretrial, but may instead discharge its gatekeeping function during trial through voir dire of the expert. *Alatorre*, 222 F.3d at 1104-1105 (citing *United States v. Nichols*, 169 F.3d 1255, 1263 (10th Cir. 1999)). Where the "evidence does not involve any new scientific theory and

1    the testing methodologies are neither new nor novel," a pretrial *Daubert* hearing is

2    unnecessary. *Nichols*, 169 F.3d at 1263 (10th Cir.1999). Forensic DNA analysis and

3    latent fingerprint comparisons, in general, satisfy the *Daubert* requirements for

4    relevance and reliability. *United States v. Wright*, 215 F.3d 1020, 1027 (9th Cir.

5    2000); *United States v. Sherwood*, 98 F.3d 402, 408 (9th Cir. 1996) (holding trial

6    court did not commit clear error by admitting fingerprint evidence without performing

7    full *Daubert* analysis where defendant conceded fingerprint comparison methodology

8    has been subjected to peer review and publication); *see also United States v.*

9    *Hernandez*, 299 F.3d 984 (8th Cir. 2002)(holding fingerprint comparison testing

10   satisfies *Daubert*).  The Ninth Circuit recognizes that PCR and RFLP1 DNA testing

11   satisfies the *Daubert* standard for scientific admissibility.  *See Wright*, 215 F.3d at

12   1027; *United States v. Hicks*, 103 F.3d 837, 846-47 (9th Cir. 1996); *Chischilly*, 30

13   F.3d at 1153-1156.  Therefore, in light of the general acceptance of DNA analysis as

14   reliable scientific evidence, the Government proposes that the Court should discharge

15   its gatekeeping function for the proffered evidence during trial to avoid unnecessary

16   pretrial delay.

17   **K.    Opinion Testimony**

18          Again, the admission of expert testimony or lay witness opinion testimony is

19   within the discretion of the trial judge and will not be disturbed unless "manifestly

20   erroneous."  *United States v. Fleishman*, 684 F.2d 1329, 1335 (9th Cir. 1982), *cert.*

21   *denied*, 459 U.S. 1044 (1983); *United States v. Skeet*, 665 F.2d 983, 985 (9th Cir.

22   1982).  Opinion testimony by lay witnesses is admissible if it is rationally based on

23   the perception of the witness and helpful to a clear understanding of his testimony or

24   to the determination of a fact in issue.  Fed. R. Evid. 701; *United States v. Langford*,

25   802 F.2d 1176, 1179 (9th Cir. 1986), cert. denied, 483 U.S. 1008 (1987).  As noted in

26   the United States' previously filed Notice of Experts at ECF No. 76 and supplemented

27   Notice at ECF No. 93, the United States expects that some of the testimony noted

28   therein may fall under opinion testimony pursuant to Fed. R. Evid. 701.

**L.   The Defendant's Statements**

In this case, the United States anticipates it may introduce statements made by the Defendant during the suppression hearing held on November 4, 2015.  Under the Federal Rules of Evidence, a Defendant's statement is admissible only if offered against him.  A Defendant may not elicit his own prior statements.  Fed. R. Evid. 802(d)(2)(A); *United States v. Fernandez*, 839 F.2d 639 (9th Cir.), *cert. denied*, 109 S. Ct. 89 (1988).  The Government may also introduce statements of the Defendant to third persons under Fed. R. Evid. 801(d)(2).

A statement is not hearsay if it is an admission by party-opponent.  Admissions by a party are treated as non-hearsay under Fed. R. Evid. 801(d)(2)(A) and are thus admissible for their truth.  If the Government chooses not to introduce statements made by the Defendant, the Defendant may not introduce those statements since Federal Rule of Evidence 801(d)(2) only encompasses statements of one party when offered by the other party, so the Defendant cannot avail himself of this exception to introduce his own prior statements.  *See Fernandez*, 839 F.2d 639.

**M.   Cross-Examination of the Defendant**

A Defendant who testifies at his trial may be cross examined as to all matters reasonably related to the issues he puts in dispute during cross examination.  A Defendant has no right to avoid cross examination on matters which call into question his claim of innocence.  *United States v. Miranda Uriarte*, 649 F.2d 1345, 1353 54 (9th Cir. 1981).

**N.   Evidence of the Defendant's Character**

Neither the Defendant's character or any trait of the Defendant's character is an essential element of the crimes charged in the Third Superseding Indictment.  Thus, the defense may not introduce any evidence of specific instances of conduct (*e.g.* awards, commendations, lack of previous charges) that would reflect favorably on the Defendant.  *United States v. Solomon*, 686 F.2d 863, 873-74 (11th Cir. 1982) (disallowing, inter alia, questions re: family and military service).  In the event that the

Defendant attempts to call character witnesses to testify on his behalf, the following rules apply:

The Supreme Court has recognized that character evidence -- particularly cumulative character evidence -- has weak probative value and great potential to confuse the issues and prejudice the Jury. *Michelson v. United States*, 335 U.S. 469, 480, 486 (1948). The Court has thus given trial courts wide discretion to limit the presentation of character evidence. *Id.* at 486. Fed. R. Evid. 404(a) governs the admissibility of character evidence. Fed. R. Evid. 404(a) permits a Defendant to introduce evidence of a "pertinent" trait of character. For example, evidence of the Defendant's family or employment status is irrelevant to whether the Defendant is believable and to whether the Defendant is law-abiding, and thus inadmissible. *See United States v. Santana-Camacho*, 931 F.2d 966, 967-68 (1st Cir. 1991) (testimony of defendant's daughter purportedly showing that defendant was a good family man was inadmissible character evidence inasmuch as such character traits were not pertinent to charged crime of illegally bringing aliens into the United States).

Moreover, the form of the proffered evidence must be proper. Fed. R. Evid. 405(a) sets forth the sole methods by which character evidence may be introduced. It specifically states that where evidence of a character trait is admissible, proof may be made in two ways: (1) by testimony as to reputation; and (2) by testimony as to opinion. Thus, defendant may not introduce specific instances of his good conduct through the testimony of others. *Michelson*, 335 U.S. at 477 ("The witness may not testify about defendant's specific acts or courses of conduct or his possession of a particular disposition or of benign mental and moral traits").

On cross examination of the Defendant's character witnesses, the Government may inquire into specific instances of the Defendant's past conduct relevant to the character trait at issue. Fed. R. Evid. 405(a); *Michelson*, 335 U.S. at 479. The only prerequisite is that there be a good faith basis that the incidents inquired about be relevant to the character trait at issue. *United States v. McCollom*, 664 F.2d 56, 58

(5th Cir. 1981), *cert. denied*, 456 U.S. 934 (1982). Prior consistent statements are admissible to rebut a charge of recent fabrication, improper influence, or motive. Fed. R. Evid. 801(d)(1)(B); *United States v. Stuart*, 718 F.2d 931, 934 (9th Cir. 1983).

Unlike character witnesses, who must restrict their testimony to opinion or appraisal of a defendant's reputation, a Defendant-witness may cite specific instances of conduct as proof that he possessed a relevant character trait. *United States v. Giese*, 597 F.2d 1170, 1190 (9th Cir.), *cert. denied*, 444 U.S. 979 (1979). However, "[o]nce a witness (especially a defendant-witness) testifies as to any specific fact on direct testimony, the trial judge has broad discretion to admit extrinsic evidence tending to contradict the specific statement, even if such statement concerns a collateral matter in the case." Id. (citation omitted). Thus, if the Defendant testifies to specific instances of conduct supportive of good character, he opens the door to rebuttal evidence on all reasonably related matters, be they "collateral" or not. *Id.*

## O. Cross-Examination of Character Witnesses

Again, as previously noted, the Defendant may call character witnesses. On cross-examination of the Defendant's character witness, the Government may inquire into specific instances of the Defendant's past conduct relevant to the character trait at issue. Fed.R.Evid. 405(a); *Michelson*, 335 U.S. at 479. However, the Defendant may not, on direct examination, ask about specific instances of conduct. Fed.R.Evid. 405(a).

## P. Hearsay Exceptions Regarding Statements by Person D

Finally, the United States may seek to introduce statements by Person D to various persons and in various contexts about the sexual assault he suffered from the Defendant on October 18, 2014, including statements Person D made to a 911 operator and medical professionals, as well as excited utterances to various other witnesses. These statements are all admissible as follows:

First, such statements are admissible as present sense impressions under Fed. R. Evid. 803(1). "There are three principal requirements which must be met before

UNITED STATES' TRIAL BRIEF - 49

hearsay evidence may be admitted as a present sense impression: (1) the declarant must have personally perceived the event described; (2) the declaration must be an explanation or description of the event rather than a narration; and (3) the declaration and the event described must be contemporaneous." *United States v. Mitchell*, 145 F.3d 572, 576-77 (3d Cir. 1998); *United States v. Ruiz*, 249 F.3d 643, 646 (7th Cir. 2001) (officer's statements over the radio to fellow officer as events unfolding qualified (these statements would now be testimonial and the declarant would have to testify under *Crawford v. Washington*)). A victim's description of an extortion attempt was admitted in *United States v. Blakey*, 607 F.2d 779 (7th Cir. 1979). An officer's contemporaneous response to a defendant's admission was admitted under this exception in *United States v. Hinton*, 719 F.2d 711 (4th Cir. 1983), *cert. denied,* 465 U.S. 1032 (1984).

Other examples of use of this exception are found in *United States v. Ruiz*, 249 F.3d 643, 646-47 (7th Cir. 2001) where one office was allowed to testify to the observations of another officer describing events as the second officer was observing them (now likely inadmissible under Confrontation Clause and *Crawford v. Washington* unless declarant testifies); *United States v. Allen*, 235 F.3d 482, 492 (10th Cir. 2000), *cert. denied*, 532 U.S. 989 (2001) where a tape of a 911 call was admitted; *United States v. Andrews*, 765 F.2d 1491, 1501 (11th Cir. 1985), *cert. denied*, 474 U.S. 1064 (1986), admitting a tape the testifying agent made while observing criminal activity; *People of the Territory of Guam v. Ignacio*, 10 F.3d 608, 614 (9th Cir. 1993) where statement of victim of child abuse made to sister giving her a bath about injury admitted..

Second, such statements are also admissible as excited utterances. Fed. R. Evid. 803(2). "The requirements for a hearsay statement to constitute an excited utterance are: (1) a startling occasion, (2) a statement relating to the circumstances of the startling occasion, (3) a declarant who appears to have had opportunity to observe personally the events, and (4) a statement made before there has been time to reflect

and fabricate." *United States v. Mitchell*, 145 F.3d 572, 576-77 (3d Cir. 1998), *see also United States v. Iron Shell*, 633 F.2d 77 (8th Cir. 1980), *cert. denied*, 450 U.S. 1001 (1981); *United States v. Zizzo*, 120 F.3d 1338, 1355 (7th Cir. 1997).

Regarding excited utterances, the statement itself, as well as the appearance of the declarant, may provide the proof of the exciting event. *United States v. Brown*, 254 F.3d 454 (3d Cir. 2001), *cert. denied*, 535 U.S. 944 (2002); *United States v. Clemmons*, 461 F.3d 1057 (8th Cir. 2006) (statements of victim of shooting (five gunshot wounds) to officer who arrived on scene, despite fact that victim talking calmly on cell phone at the time). Under this exception, the statement need not be contemporaneous with the event, but with the excitement caused by the event. *People of the Territory of Guam v. Ignacio*, 10 F.3d at 614-15 (statement to babysitter about one hour after assault admitted). Also, the firsthand knowledge requirement can include opinions and inferences grounded in observations or other firsthand knowledge. *United States v. Joy*, 192 F.3d 76, 767 (7th Cir.), *cert. denied*, 530 U.S. 1250 (1999); *United States v. Pursley*, 577 F.3d 1204, 1221-22 (10th Cir. 2009) (assault victim's statements to marshal one hour after assault admissible under rule—victim was with assailants for half that time).

Furthermore, statements admitted under the excited utterance exception may be broader in scope than those admitted under the present sense exception. A present sense statement must be a description or explanation of the event, while an excited utterance exception need only relate to a startling event. An excited utterance may be admissible if made in response to questioning, *People of Guam v. Cepeda*, 69 F.3d 369, 372 (9th Cir. 1995), or if the statement contains an opinion or is non-factual. *Woodward v. Williams*, 263 F.3d 1135, 1141 (10th Cir. 2001).

Third, if the foundation cannot be laid for an excited utterance (or a present sense impression), the statement still may be admissible as a prior consistent statement. *United States v. Andrews*, 765 F.2d 1491, 1501 (11th Cir. 1985), cert. denied, 474 U.S. 1064 (1986).

Fourth, statements for purposes of medical diagnosis o r treatment are similarly admissible.  Fed. R. Evid. 803(4).  The exception extends to statements of causation, but not fault, ordinarily.  However, in some instances a statement pertaining to fault, *e.g.,* identity of an assailant, is admissible.  *People of the Territory of Guam v. Ignacio*, 10 F.3d at 613 (statement must be pertinent to diagnosis or treatment, but identity of perpetrator can be pertinent for psychological injury and relative to sexually transmitted diseases); *United States v. Joe*, 8 F.3d 1488, 1494 (10th Cir. 1993).  The rule eliminates the distinction between a treating physician and a diagnosing (expert).  *United States v. Farley*, 992 F.2d 1122 (10th Cir. 1993).

## V.    POSSIBLE DEFENSES

The Defendant has not given notice of any defense for which the Federal Rules of Criminal Procedure require notice.  Therefore, the Government would move to bar any such defense if it were raised during trial.

## VI.    RECIPROCAL DISCOVERY

To date, the United States has provided over 9,000 pages of discovery to the defense.  Since the inception of this prosecution, the United States has made available for the defense review all of the items of evidence, whether intended to be used as trial exhibits or not, over which the Government has custody or control.  Defense counsel has reviewed the United States' evidence on more than one occasion.  The United States has requested reciprocal discovery on several occasions, but has received none.  Should the Defendant seek to introduce any evidence that should have been provided to the United States as reciprocal discovery, the Court should exclude it under Rule 16(d)(2) of the Federal Rules of Criminal Procedure and its previous Order.

## VII.  DOUBLE JEOPARDY

In this case, Defendant may argue that the charge of possession of child pornography is a lesser included charge of receipt of child pornography, and that to punish the Defendant for both offenses would be in violation of double jeopardy.  In the case of *United States v. Davenport*, 519 F.3d. 940 (2008), the Ninth Circuit determined that the offense of possessing child pornography is a lesser included offense of the receipt of child pornography, *Id.* at 947.  Nevertheless, the Government may include both offenses in the Indictment and may prosecute the Defendant for both offenses through trial.  *Davenport*, 519 F.3d at 944; *see Ball v. United States*, 470 U.S. 856, 865.  It is the punishment, not the prosecution, which would violate Defendant's Fifth Amendment right to be free from being punished twice for a single criminal offense.

## VIII.  CONCLUSION

The foregoing is a summary of points the United States anticipates may arise at trial.  Should any legal issues arise that have not been covered in this Trial Brief, the United States respectfully requests leave to submit such further memoranda as may be necessary.

Respectfully submitted, this date:  February 8, 2016.

MICHAEL C. ORSMBY
United States Attorney

*s/ Stephanie J. Lister*
Stephanie J. Lister
Assistant United States Attorney

*s/ James A. Goeke*
James A. Goeke
Assistant United States Attorney

UNITED STATES' TRIAL BRIEF - 53

## CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Bryan Whitaker
815 W. 7th, Suite 303
Spokane, WA  99204

*s/ James A. Goeke*
James A. Goeke
Assistant United States Attorney